746 F.2d 998
 36 Fair Empl.Prac.Cas. 159,
35 Empl. Prac. Dec. P 34,741
Doreen A. DILLON, Appellant in 83-5831,
v.
Ricardo COLES, individually and in his official capacity as
the Director of Youth Forestry Camp Number 1, Youth Forestry
Camp Number One, Helen O'Bannon, individually and in her
capacity as the Secretary of the Pa. Dept. of Public
Welfare, and The Pa. Dept. of Public Welfare.
Appeal of Ricardo COLES, Youth Forestry Camp Number One, and
the Pennsylvania Department of Public Welfare.
 Nos. 83-5831, 83-5803.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 13, 1984.
Decided Oct. 29, 1984.
 
 John Stember (argued), Daniel L. Haller, Neighborhood Legal Services Association, Pittsburgh, Pa., for appellant/cross-appellee Doreen Dillon.
 Leroy S. Zimmerman, Atty. Gen., Allen C. Warshaw, Sr. Deputy Atty. Gen., Chief, Litigation Section, Harrisburg, Pa., Sheila M. Ford (argued), Deputy Atty. Gen., Pittsburgh, Pa., for appellees/cross-appellants Ricardo Coles, et al.
 Before ALDISERT, Chief Judge, WEIS, Circuit Judge, and RE, Chief Judge.*
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 In this Title VII case, the defendants' burden of producing evidence to show that plaintiff would not have been hired even absent discrimination was an integral part of the liability phase of the case. The district court, viewing the issue as a relief inquiry, incorrectly placed a burden of persuasion on defendants, but in the circumstances here, the ruling is not reversible. In addition, we agree with the district court that a backpay award against the state may be reduced by the amount of unemployment benefits and public assistance payments received by plaintiff. Accordingly, we will affirm.
 
 
 2
 After a bench trial, the district court found that defendants had discriminated against plaintiff in refusing to employ her because she was a woman. She was awarded back pay, and defendants were directed to hire her for the first available vacancy. Both parties appeal.
 
 
 3
 Plaintiff applied for permanent employment as a Houseparent at Youth Forestry Camp No. 1, a juvenile detention facility, operated by the Commonwealth of Pennsylvania through its Department of Public Welfare. The camp houses male teenage delinquents in two dormitory-style barracks. Houseparents, who work weekly rotating shifts, are responsible for twenty-four hour supervision of the detainees.
 
 
 4
 Houseparent positions are filled through the state's civil service hiring process. 71 PA.CONS.STAT.ANN. Secs. 741.501-741.603, (Purdon Supp.1983). To be considered for this employment, an applicant must first pass an examination. Next, the names of successful examinees are placed on a hiring list in test score order.
 
 
 5
 When a position becomes open at the camp, the director or one of his subordinates submits a request to the Civil Service Commission which in turn provides a "certification of eligibles." The certification identifies persons who have passed the test and indicated a willingness to work at the camp. A camp official then invites the top-ranking applicants for an interview. The position is offered to one of those who has the three highest scores among those candidates who appear.
 
 
 6
 The civil service regulations permit the use of eligibility lists limited to individuals who meet special qualifications. See 4 Pa.Code Sec. 95.4 (1984). In 1977, the camp director, defendant Ricardo Coles, submitted a written request to use an all-male list when filling Houseparent positions. He received approval from the Civil Service Commission. A selective certification of eligibles remained in use until December 1980, when the Commission directed the camp to stop the practice. From December 1979 until December 1980, seven Houseparent positions were filled by men.
 
 
 7
 Plaintiff contended that she should have been hired after passing the test. She protested the failure to consider her application. After receiving a right to sue letter from the EEOC, she filed a complaint in the district court alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000(e), et seq., the Civil Rights Act of 1871, 42 U.S.C. Sec. 1983, and the Equal Rights Amendment, Art. I, Sec. 28 of the Pennsylvania Constitution.
 
 
 8
 Concluding that plaintiff had established a prima facie case of disparate treatment at trial, the district court reviewed the defendants' evidence of nondiscriminatory reasons for not hiring plaintiff. The defendants contended that even though the all-male list was used, plaintiff was denied employment because of her misconduct during a CETA training period as a Houseparent trainee.[1]
 
 
 9
 The rebuttal evidence consisted of testimony that plaintiff had failed to report two instances of inmate misconduct, had improperly disclosed confidential information about one of the youths, had made malicious remarks about other employees, and that staff members did not wish her to be hired. Although not questioning the truth of the reports, the court concluded that these grounds were pretextual. Therefore, in the court's view, plaintiff had proved intentional discrimination by showing that gender was a determinative factor in the state's failure to hire her.
 
 
 10
 The court rejected the defendants' contention that three males who had lower scores than plaintiff would have been hired in any event because they had other qualifications superior to hers. The court observed that defendants had failed to show the three males would have been among the top three applicants if a nondiscriminatory list had been used.
 
 
 11
 The court awarded back pay as of March 1980, the date of the first vacancy after plaintiff had passed the examination. This amount was reduced by earnings from other employment, unemployment compensation, and public assistance benefits.[2] No front pay was awarded. The court also directed the state to hire plaintiff to fill the first available vacancy with retroactive seniority, provided she regained her status as an eligible on the civil service list and three women who had been on that list since December 1979 did not outrank her. Because defendants had stipulated that women were capable of performing Houseparent duties, the court enjoined the use of a selective list limited to males.[3]
 
 
 12
 On appeal, plaintiff contends that the deductions from her back pay were improper and challenges the court's failure to award "front pay" as well as the adequacy of the hiring order. Plaintiff also insists that punitive damages against defendant Coles should have been awarded.[4] Defendants contend that the district court erred in finding liability and in shifting the burden of persuasion to them in the "relief" phase of the case.
 
 
 13
 * The challenges to the court's remedy and its finding of liability in this disparate treatment case illustrate that there is still uncertainty about the procedures in cases of this nature. We therefore believe it advisable to review once again the burdens of persuasion and production in Title VII cases.[5]
 
 
 14
 As the Supreme Court observed in United States Postal Service Board of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983), a Title VII suit is civil litigation to redress a statutory violation. As in other civil suits, it is possible to establish liability by direct evidence. If so, the proof problems are not different simply because the case arises under Title VII. Recognizing, however, that in most employment discrimination cases direct evidence of the employer's motivation is unavailable or difficult to acquire, the Court articulated a method of proof that relies on presumptions and shifting burdens of production.
 
 
 15
 McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), set out the now familiar pattern. The plaintiff must initially establish a prima facie case. The burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the plaintiff's rejection." Finally, the plaintiff must be given an opportunity to show that the defendant's stated reasons were in fact only pretextual or incredible.
 
 
 16
 The McDonnell Douglas formula, though applied in several cases, e.g., Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978), Furnco Construction Corp. v. Waters, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), lacked precision until clarified in Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Burdine makes clear that the plaintiff has the burden of persuasion by a preponderance of the evidence to make out a prima facie case of discrimination. Id. at 253-54, 101 S.Ct. at 1093-94. To rebut, the defendant has the burden of going forward with evidence explaining its actions. Id. at 254-56, 101 S.Ct. at 1094-95. If the defendant fails to produce any evidence, the court must enter judgment for the plaintiff. Id. at 254, 101 S.Ct. at 1094.
 
 
 17
 If the defendant does go forward, its burden is not persuasion but only production. If the defendant's evidence raises a genuine issue of fact, id. at 254, 101 S.Ct. at 1094, the presumption created by the plaintiff's prima facie case drops from the case, id. at 255 n. 10, 101 S.Ct. at 1095 n. 10. The plaintiff then may show that the defendant's reasons are either pretextual or unbelievable. Id. at 256, 101 S.Ct. at 1095. Even though the parties each bear particular evidentiary responsibilities, the burden of persuasion throughout the case remains with the plaintiff. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093.
 
 
 18
 The McDonnell Douglas formula is a tool that enables the trial judge to sift through the evidence in an orderly fashion to determine the ultimate question in the case--did the defendant intentionally discriminate against the plaintiff. Aikens, 460 U.S. at 715-17, 103 S.Ct. at 1482-83. The presumptions and the shifting burdens are merely an aid in making that determination; they are not ends in themselves. Id.
 
 
 19
 The formula does not compartmentalize the evidence so as to limit its use to only one phase of the case. The plaintiff's evidence might serve both to establish a prima facie case and discredit a defendant's explanation. Similarly, the defendant's evidence may not only present legitimate reasons for its decision, but also may so undermine the credibility of the plaintiff's testimony that the believable evidence no longer establishes a prima facie case.
 
 
 20
 In discussing the remedy to be fashioned here, the court professed some doubt about where the burden of persuasion rested. The district judge cited Richerson v. Jones, 551 F.2d 918 (3d Cir.1977), as an indication that this court requires the defendant to bear the burden of "proving by a preponderance of the evidence that plaintiff's qualifications were such he would not have been selected for promotion even absent discrimination."
 
 
 21
 Richerson and cases it relies on were pre-Burdine decisions. See Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 399 (3d Cir.1976); United States v. International Union of Elevator Constructors, 538 F.2d 1012, 1017 (3d Cir.1976). See also Rodriguez v. Taylor, 569 F.2d 1231, 1240 (3d Cir.1977). The references in those opinions to a burden of persuasion on the defendant are no longer valid after Burdine. Contra League of United Latin American Citizens v. Salinas Fire Dept., 654 F.2d 557 (9th Cir.1981).
 
 
 22
 The district court recognized the effect of Burdine, but read Richerson as a case in which this court imposed a separate burden shifting mechanism in the damage or relief phase of a discrimination case. This point is at issue in many Title VII cases, and some confusion has arisen because of a tendency in various opinions to use "relief stage" and "damage phase" interchangeably whether the suit is brought by a class or an individual plaintiff. It is helpful to review the proof requirements in each instance.
 
 
 23
 In a class action disparate treatment case, the class representative's prima facie case must establish that discrimination was the employer's standard practice. Cooper v. Federal Reserve Bank of Richmond, --- U.S. ----, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984); International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); Franks v. Bowman Transportation Co. Inc., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). Once this is proved by a preponderance of the evidence, the class is entitled to an injunction barring continuation of the discriminatory practice. Teamsters, 431 U.S. at 361, 97 S.Ct. at 1867. As to the class, liability has been established and prospective relief is required.
 
 
 24
 But as to the individual members of the class, the liability phase remains incomplete. To establish the right to employment, promotion, reinstatement, back pay, or similar relief, the individuals have the additional burden of showing that each was an actual victim of discrimination. They must show that vacancies or opportunities for employment or advancement existed. "The inquiry regarding an individual's claim is the reason for a particular employment decision...." Cooper v. Federal Reserve Bank, --- U.S. at ----, 104 S.Ct. at 2800; Franks v. Bowman, 424 U.S. at 772, 96 S.Ct. at 1268.
 
 
 25
 As to an individual class member, the liability phase of the case is not concluded until he demonstrates his own basis for an award. Thus, in a class action after the individual has presented his prima facie case, placing the burden on the employer "to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons", Teamsters, 431 U.S. at 362, 97 S.Ct. at 1868, is entirely consistent with the Burdine allocation of burdens in a suit brought by an individual plaintiff.
 
 
 26
 It is misleading to speak of the additional proof required by an individual class member for relief as being part of the damage phase;[6] that evidence is actually an element of the liability portion of the case. Until the individual has demonstrated actual injury to himself, the court may not direct individual relief. Just as in the tort field, where "negligence in the air" is not enough to fasten liability on a defendant, so in a Title VII case discrimination in general does not entitle an individual to specific relief.
 
 
 27
 In a class action setting, an individual member may build on the discrimination established by the class. In a suit brought solely by an individual, however, that foundation is not available. Therefore, he must establish that he belonged to a protected group, he was qualified for, and applied for a job vacancy, but he was nevertheless rejected, and the position remained open and the employer continued to seek applicants or filled the position with a person of the plaintiff's qualifications.
 
 
 28
 Included in the defendant's rebuttal would be evidence that absent discrimination the plaintiff would not have been hired or promoted because of lack of qualifications, curtailment of operations, or similar matters. This burden of production resting on the employer goes to liability, not relief, and is governed by Burdine. Consequently, the district court misread Richerson as establishing a separate burden for remedy. In fact, Richerson's discussion of burden of proof pertains to liability; the same is true of Rodriguez v. Taylor, 569 F.2d 1231 (3d Cir.1977).
 
 
 29
 The McDonnell Douglas formula was devised to cope with the difficulty of proving intentional discrimination. Once the plaintiff establishes liability the sine qua non for the formula no longer exists. We have not, nor has the Supreme Court, established any special procedures for analyzing evidence in the "damage" portion of Title VII litigation, the true "relief" phase. At that point, the general equitable rules of proof governing relief prevail. Cf. Kunda v. Muhlenberg College, 621 F.2d 532 (3d Cir.1980); Toney v. Block, 705 F.2d 1364 (D.C.Cir.1983).
 
 
 30
 The district court erred in placing on defendants the burden of proving by a preponderance of the evidence that the plaintiff's qualifications were such that she would not have been selected for promotion even absent discrimination. That error, however, is not reversible here. As the district court's opinion reveals, defendants failed to produce evidence of the plaintiff's relative lack of qualifications. Thus, defendants did not introduce evidence to raise a genuine issue of fact about the plaintiff's credentials and accordingly failed to meet their burden of production under Burdine.
 
 II
 
 31
 Defendants contend that the court predicated liability on an incorrect standard of causation in finding that gender "was a determinative factor in the decision not to consider [plaintiff] for a position." The court's choice of that language, rather than an explicit reference to a "but for" test, in defendants' view, is reversible error.
 
 
 32
 The district court decided this case without the benefit of our opinion in Lewis v. University of Pittsburgh, 725 F.2d 910 (3d Cir.1983), cert. denied, --- U.S. ----, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984), discussing the substance of the "but for" test. We explained that the use of the definite article "the" rather than the indefinite "a" was not reversible error in a jury charge if from the instructions as a whole it is plain the plaintiff was to prove the impermissible factor made a difference.
 
 
 33
 Similarly, in Smithers v. Bailar, 629 F.2d 892 (3d Cir.1980), an ADEA suit, we cautioned that the findings and opinion of a district court in a nonjury case must be read in its entirety. Our function is to "examine a trial court's statements to discern what the court meant in the opinion as a whole, rather than what was stated particularly in isolated sentences." Id. at 897. Using that standard here, we are persuaded that the district court determined that the plaintiff's gender "made a difference" in the decision and "but for" that circumstance she would have been considered for hiring.
 
 
 34
 Defendants reason that it is inconsistent with the "but for" test to find liability and also find that plaintiff had in fact failed to report inmate misconduct, disclosed confidential information, and made malicious remarks. It is, however, consistent with the "but for" standard to accept the accuracy of these reports, yet discredit them as the real reasons for having made the employment decision. We therefore find no reversible error in the district court's choice of language.
 
 III
 
 35
 The district court directed that plaintiff be hired provided she reestablished eligibility on the civil service list and outranked three women who might have been on the list as of December 1979. The parties and the district court were hampered in attempting to recreate conditions as they existed in March 1980, when the first vacancy occurred, because a fire had destroyed critical personnel records.
 
 
 36
 Title VII gives the court the authority to award appropriate relief, including "reinstatement or hiring, with or without back pay ... or any other equitable relief as the court deems appropriate." 42 U.S.C. Sec. 2000e-5(g) (1982). The court is thus given broad equitable discretion which is to be exercised "in light of the large objectives of the Act." Ford Motor Co. v. EEOC, 458 U.S. 219, 226, 102 S.Ct. 3057, 3063, 73 L.Ed.2d 721 (1982). Generally back pay is awarded unless the trial judge explains why it would not be appropriate. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).
 
 
 37
 The district judge conscientiously attempted to fashion relief which would be fair under the circumstances. He did this by assuming that plaintiff would have been hired on March 9, 1980, when the first vacancy occurred after plaintiff passed the test. Back pay was assessed from that point.
 
 
 38
 Defendants contend that the person who was hired on March 9, 1980 had a higher score and would have been selected over plaintiff in any event. But that does not necessarily follow. The camp had the discretion to hire one of those having the top three scores among the applicants who demonstrated an interest in the position. Thus, it is equally conceivable that plaintiff might have been hired on the earlier date. We cannot say that the trial judge erred in selecting the March date.
 
 
 39
 Plaintiff complains that she should also have been awarded "front pay,"--the amount of money she would have expected to earn until she was hired by defendant. The trial judge refused to make such an allowance, reasoning that it was not equitable because plaintiff was being awarded back pay for a position to which she may not ever have been appointed. The court observed that it was not inclined to grant plaintiff a windfall.
 
 
 40
 A front pay award is discretionary with the trial court. See e.g., Fitzgerald v. Sirloin Stockade, Inc., 624 F.2d 945 (10th Cir.1980). It differs from a back pay allowance because it necessarily implicates a prediction about the future. See Loeb v. Textron, Inc., 600 F.2d 1003 (1st Cir.1979) (ADEA).
 
 
 41
 In this case, the uncertainty of a hiring date is a factor, particularly since we were informed at argument that the camp was closed soon after the district court entered its judgment. There were many hotly disputed issues between the parties about the plaintiff's competency and ability to get along with her co-workers and superiors. These factors indicated some question about how long she would have continued in employment had she been hired.
 
 
 42
 The record reveals that plaintiff is about 58 years of age, attended the Mason-Frederick Beauty School, and has a manager/teacher's license as well as operator's license. She can run a beauty shop and has done so on a part-time basis. Plaintiff also has an associate degree in business administration from Penn State University.
 
 
 43
 The trial judge must exercise discretion in ordering relief in circumstances such as those here. The evidence was incomplete and required interstitial augmentation by the experienced trial judge. We are not persuaded that he exceeded his discretion in choosing remedies or that the relief was inadequate.
 
 IV
 
 44
 Plaintiff, however, has raised a question of law about the deductions for unemployment compensation benefits and public assistance. In Craig v. Y & Y Snacks, Inc., 721 F.2d 77 (3d Cir.1983), a panel of this court, conceding that the question was close, nevertheless concluded that unemployment benefits should not be deducted from a Title VII back pay award. Part of the rationale supporting the result was that unemployment compensation payments were collateral benefits. Deducting them would in effect relieve the employer of part of its obligation to make the plaintiff whole.
 
 
 45
 There is a significant and controlling difference, however, between Craig and this case. The employer here is not a private company but the state itself[7] and it paid the unemployment benefits. As Craig pointed out, a Pennsylvania statute provides for recoupment of those benefits by the state when back pay has been awarded. PA.STAT.ANN. tit. 43, Sec. 874(b)(3) (Purdon Supp.1982). That being so, the circumstances presented here establish an obligation by the state to satisfy the back pay award and a duty by plaintiff to repay the unemployment benefits from the award. It would be wasteful of public funds to require the state to institute the separate suit it is authorized to bring to recoup part of the back pay award. In short, the situation here is quite different from that in Craig and the facts argue for, rather than against, the unemployment benefit offset. Contra Rasimas v. Michigan Dept. of Mental Health, 714 F.2d 614 (6th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984).
 
 
 46
 Much the same reasoning governs the deduction for public assistance payments which plaintiff received from the state. She made no payment into a special fund to provide for those benefits. Cf. Titchnell v. United States, 681 F.2d 165 (3d Cir.1982) (Medicare Part A payments not deductible from tort award when plaintiff contributes to fund); Smith v. United States, 587 F.2d 1013 (3d Cir.1978) (Social Security benefits not deductible from tort claims award because plaintiff had paid into the special Social Security fund). Therefore no collateral source rule is implicated.
 
 
 47
 Moreover, the Pennsylvania Support Law provides in pertinent part:
 
 
 48
 "(a) the ... personal property of any person shall be liable for the expenses of his support, maintenance, [and] assistance ... incurred by any public body or public agency, ... if a right or cause of action existed during the time such expenses were incurred from which the ownership of such property resulted. Any public body or agency may sue the owner of such property for moneys so expended."
 
 
 49
 PA.STAT.ANN. tit. 62, Sec. 1974 (Purdon 1968). Thus the public assistance benefits are treated as a loan the recipient must repay. See Shearer v. Moore, 277 Pa.Super. 70, 419 A.2d 665 (1980). See also Charleston v. Wohlgemuth, 332 F.Supp. 1175 (E.D.Pa.1971) (3 Judge court), aff'd mem., 405 U.S. 970, 92 S.Ct. 1204, 31 L.Ed.2d 246 (1972).
 
 
 50
 Just as in the unemployment benefits repayment situation we see no reason to require the state to file a separate suit to recoup the public assistance payments. Craig does not control where the back pay award is against the state. Consequently the reduction was properly allowed in this case.
 
 
 51
 Accordingly, the judgment of the district court will be affirmed.
 
 
 
 *
 The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation
 
 
 [1]
 Plaintiff had been accepted as a Houseparent trainee in September 1979. The CETA contract had a provision for preferential hiring should vacancies occur. Defendants thus had reason to consider plaintiff and may have done so informally on at least two occasions
 
 
 [2]
 The net amount of plaintiff's money judgment is $28,133.07. The workmen's compensation payments were $495 and the public assistance benefits totalled $3,626
 
 
 [3]
 The court declined to grant any relief on the plaintiff's claims based on the Pennsylvania Constitution and Section 1983. Except for the denial of punitive damages against defendant Coles, those rulings have not been appealed, and we do not discuss them
 
 
 [4]
 Punitive damages under section 1983 may be awarded in appropriate circumstances. The matter, however, is one entrusted to the discretion of the fact finder. Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). The court found that the plaintiff's immediate supervisor, not defendant Coles, "was the catalyst for the discriminatory decision making." Plaintiff has failed to show an abuse of discretion by the trial court, and we reject her challenge to the denial of punitive damages
 
 
 [5]
 Though the case at hand is a disparate treatment suit, in NAACP v. Medical Center, Inc., 657 F.2d 1322 (3d Cir.1981), we concluded that a defendant's burden is the same in both disparate treatment and disproportionate impact cases. Thus, though the nature of the evidence may vary depending on the type of case, the procedures will correspond
 
 
 [6]
 We recognize of course that in a Title VII case, the relief is equitable and strictly speaking "damages" is a legal concept. We use the reference to a "damages" aspect of a claim at law to illustrate more clearly the separation between the various phases of a Title VII case when burden shifting occurs
 
 
 [7]
 In the plaintiff's pretrial statement, she conceded that unemployment compensation and public assistance benefits should be offset against any back pay awarded. The defendants took the same position
 After the district court filed its decree, we decided Craig v. Y & Y Snacks, 721 F.2d 77 (3d Cir.1983). In the brief in this court, the defendants conceded that Craig controlled and the unemployment and public assistance payments could not be deducted from the back pay awarded plaintiff by the court.
 If this were purely private litigation, we might accept the concessions as removing the matter from our review. However, because the state is a party and tax funds are at stake, we are not inclined to overlook the public interest by failing to correct the defendants' misreading of Craig.