### Helen GELOF

v.

### Louis PAPINEAU, in his capacity as Director of the Delaware Development Office, Appellant.

### No. 86–5924.

United States Court of Appeals, Third Circuit.

Argued June 24, 1987.

Decided Sept. 25, 1987.

---

Roy S. Shiels, Brown, Shiels & Chasanov, Dover, Del., and John A. Guernsey (argued), DeStefano & Guernsey, Philadelphia, Pa., for appellee.

Michael F. Foster, Regina M. Mullen (argued), Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for appellant.

Before GIBBONS, Chief Judge, WEIS, Circuit Judge, and GILES, District Judge.*

## OPINION OF THE COURT

GIBBONS, Chief Judge.

Louis Papineau, Director of the Delaware Development Office, appeals from a judgment against him in his official capacity and in favor of Helen Gelof in her suit under the Age Discrimination in Employment Act. 29 U.S.C. §§ 621–634 (1982 & Supp. III 1985), 648 F.Supp. 912. Gelof was awarded damages totalling $325,201.65 plus post-judgment interest at the rate of 17%. The State of Delaware does not now dispute the district court's liability determination. It challenges the amount of the award in three particulars. We vacate the judgment and remand for a redetermination of some items of recovery.

### A.

Set-Off for Unemployment Compensation

■ Gelof received unemployment compensation for one year following the termination of her employment at the Delaware Development Office. The parties stipulate that she collected $8,580.00. Under the Delaware Unemployment Compensation Act, Del.Code Ann. tit. 19, § 3345(b)(1) (Supp.1986), Delaware as public employer participates in the unemployment compensation fund on a dollar-for-dollar reimbursement basis.[1] The Delaware statute does not, however, provide for recoupment by the fund of unemployment benefits when back pay has been awarded for a wrongful discharge. *Cf.* Pa.Stat.Ann. tit. 43, § 874(b)(3) (Purdon Supp.1987) (explicitly allowing recoupment).

Delaware, relying on *Dillon v. Coles,* 746 F.2d 998, 1006–07 (3d Cir.1984), contends that although it could sue Gelof for recoupment it should be able to set off against her back pay award the $8,580.00 paid to her from the fund. Gelof, relying on *Craig*

*v. Y & Y Snacks, Inc.,* 721 F.2d 77, 81–85 (3d Cir.1983), contends (and the district court ruled) that unemployment compensation payments may not be set off against a back pay award in the absence of a statutory provision for recoupment. Both *Dillon* and *Craig* are cases arising under Title VII of the Civil Rights Act of 1964. It is settled in this court, however, that in cases arising under the Age Discrimination in Employment Act unemployment compensation payments may not be set off against back pay awards made in favor of employees in the private sector. *McDowell v. Avtex Fibers, Inc.,* 740 F.2d 214, 216–17 (3d Cir.1984), *vacated and remanded on other grounds,* 469 U.S. 1202 (1985). Indeed, the *McDowell* opinion relied on *Craig,* and on the Supreme Court's opinion in *NLRB v. Gullett Gin Co.,* 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951), a National Labor Relations Act case, in deciding that set-off of unemployment compensation benefits against age discrimination back pay awards would be inappropriate. The *McDowell* court observed:

> In our view the reasons supporting this court's decision concerning Title VII in *Craig* apply even more so to this case involving the ADEA. Indeed, ... while the ends of the two statutes are virtually identical, the ADEA back pay awards, unlike Title VII back pay awards, are not discretionary.

740 F.2d at 217. Thus *Craig* and *McDowell* control unless this case fits within the narrow exception recognized in *Dillon.*

In *Craig* we adopted the rule against set-off of unemployment benefits

> because we conclude[d] that the legislative history and *Gullett Gin* are persuasive, that the primary prophylactic policy of Title VII would thereby be better served, that the rule would foster uniformity in applying the back pay remedy, *and that the recoupment of unemployment benefits by the state is the better way of dealing with any possible*

---

\* Hon. James T. Giles, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. The version of the statute in effect during the time Gelof received unemployment compensation is essentially the same. *See* 63 Del.Laws ch. 192 (1981).

*unfairness as between the state and recipient.*

721 F.2d at 85 (emphasis supplied). In *Dillon,* a Title VII case against the Commonwealth of Pennsylvania, which unlike Delaware has a recoupment statute, we permitted a set-off because

█t would be wasteful of public funds to require the state to institute the separate suit it is authorized to bring to recoup part of the back pay award.

746 F.2d at 1007. Thus it is clear that the outcome in *Dillon* depended upon the fact that under Pennsylvania law the Commonwealth's unemployment compensation fund had a substantive cause of action for recoupment from recipients of back pay awards who had received fund benefits. That recoupment cause of action exists, moreover, whether the employer is public or private. Pa.Stat.Ann. tit. 43, § 874(b)(3). It is thus a part of the defined insurance benefit which accrues to employees in Pennsylvania by virtue of their labor.

█ Delaware urges that even though its fund has no recoupment feature it should nevertheless have the benefit of the *Dillon* exception. Delaware reasons that unlike private employers in that state, whose contributions to the fund are in the nature of a tax, it reimburses the fund on a dollar-for-dollar basis. Thus, Delaware urges, it is a direct rather than a collateral source of the funds and should not be subjected to the *Craig* rule. Delaware's argument, however, ignores several important considerations. The first of these is the deterrent policy stressed by the *Craig* opinion. 721 F.2d at 84. That policy is no less applicable when the state reimburses the fund. Moreover, while the unemployment compensation fund receives contributions from employers in the private sector indirectly in the form of taxation, the source of all the state's funds, including those it pays into the unemployment compensation fund, is also taxation. Thus all payments from the fund are a form of social insurance supported by taxation. Fi-

nally, that social insurance payment is not simply a form of state largess. Both in the private and in the public sector unemployment compensation benefits are earned by the employee because of past labor. In this respect a public and private employee are identically situated.

We hold, therefore, that in cases in which the state has not defined the social insurance benefit by including a provision for recoupment against back pay awards, *Craig* is the controlling precedent. Thus the district court did not err in declining to set off $8,580.00 from Gelof's back pay award.

### B.

### Tax Effect

█ The district court included in Gelof's award an element of damages to compensate her for the increased income tax burden that would result from a lump sum payment in a single tax year of back pay which would otherwise have been paid over several years. Delaware does not contest its liability for that element of damages.[2] The state contends only that the district court erred in calculating the award. The amount included in the judgment, based on a report of Gelof's economic expert, is $85,031.00. This expert's calculation, Delaware contends, is based on a back pay award $23,331.33 higher than that actually awarded. Moreover, the state contends, the expert's calculations are based upon 1986 tax rates, whereas the district court should have been aware that the judgment would not be paid until 1987.

Gelof replies that the award should stand because her expert, not knowing what amount would be awarded, did not include prejudgment interest in the base figure on which he calculated the negative tax impact of a lump sum payment. Moreover, she urges, the 1986 tax rates were used because that was the law in effect in May of 1986 when the trial took place.

**2.** In light of Delaware's concession that the judgment should properly include the negative tax impact of a lump sum payment as an element of damages, we do not address the question of whether such an award should be made in all back pay cases.

We are unable, from the district court's findings of fact, to determine the precise basis for the award of $85,031.00 for the tax impact of a lump sum payment. It may be that the award was made based on the 1986 tax law because the court contemplated that payment would be made in that year. We do not know the district court's position on whether prejudgment interest should be taken into account. Given Delaware's concession, some amount of damages for negative tax effect of a lump sum payment should be awarded. In fairness to the parties, however, we can neither affirm the amount awarded nor say with complete conviction that it is excessive. Thus we will vacate that part of the judgment awarding $85,031.00 in tax effect damages, and remand for further findings by the district court on that issue.

### C.

### Prejudgment Interest

The district court included in the award pre-judgment interest at a rate of 17%, totalling $71,702.98. The court arrived at this rate based on the rate of interest allowed on judgments under Delaware law, which is "5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due." Del. Code Ann. tit. 6, § 2301(a) (Supp.1986). Delaware concedes that the district court did not abuse its discretion in holding it liable for prejudgment interest. It contends, however, that the district court erred in calculating the amount thereof.

■ First, Delaware contends that the court's discretion should be limited to selection of a rate that represents the claimant's lost investment opportunities. We reject that contention. Gelof was deprived of a periodic salary needed for daily existence, not merely deprived of investment opportunities. She was deprived of use of that salary from time to time, and presumably had to resort to other sources of funds in order to live. The district court did not, therefore, abuse its discretion in selecting the rate of interest allowed on judgments under Delaware law as an appropriate measure of the loss of use of funds.

■ Delaware's next objection to the district court's calculation is that even if the Delaware legal rate was appropriate it was misapplied in two respects. First, the state contends that the district court selected the Federal Reserve discount rate as of the date of Gelof's termination on January 31, 1982, which resulted in a legal rate of 17% (12% + 5%), and applied the rate to all back pay, regardless of when the pay would have accrued. The state points out that the Federal Reserve rediscount rate fluctuated between the date of termination and the date of judgment. Second, the state contends that the court abused its discretion in applying the 17% rate from the date of termination to the date of judgment rather than from when the salary should have been paid.

A careful analysis of the district court's prejudgment interest award reveals that the second alleged error did not occur. If the calculation had been made as the state suggests, prejudgment interest (without compounding) would have been $93,929.37 ($114,315.67 back pay × 17% × 4 yr. 10 mo. = $93,929.37). On the other hand, because the district court did not set forth its method of calculation we can only speculate that the calculation was made on a compounded annual basis on back pay and health benefits due each year.

When prejudgment interest is to be awarded on back pay which should have been paid over a number of years the trial court must be afforded reasonable discretion in selecting intervals for convenience in making the interest calculations. Moreover, convenience in making the calculations requires that if the governing interest rate has fluctuated an interest rate be selected for each interval. Our difficulty in this case arises from the absence of any explanation by the district court about (1) the method of calculation, or (2) the reasons for selection of that method in preference to others which might more nearly approximate the plaintiff's loss. We cannot, absent these explanations, determine whether the district court abused its discretion in determining the amount of prejudg-

ment interest. Thus, as with the award of damages for negative tax impact from lump sum payment, we will vacate that part of the judgment awarding $71,702.98 in prejudgment interest, and remand for further findings by the district court on that issue.

### D.

### Post Judgment Interest

█ The district court awarded Gelof post judgment interest at the rate of 17%. Post judgment interest is governed by 28 U.S.C. § 1961 (1982). The judgment was entered on November 26, 1986. Gelof concedes that the section 1961 rate was 5.77% on November 26, 1986, and that the judgment must therefore be modified.

### E.

The trial court's judgment awarding Gelof $114,315.67 in back pay, $50,909.00 in back pension benefits, and $3,243.00 in back health benefits, without any set-off for unemployment compensation benefits she received, will be affirmed. The judgment awarding damages in the amount of $85,031.00 for the negative tax impact of a lump sum payment, and in the amount of $71,702.28 for prejudgment interest, will be vacated and the case remanded for further proceedings consistent with this opinion. Each party shall bear its own costs.

WEIS, Circuit Judge, dissenting.

I concur with the result reached by the majority, except with respect to denial of Delaware's request for the set-off of unemployment compensation benefits that Gelof had received. As the majority explains, the state reimburses its fund, dollar-for-dollar, for the benefits paid to state employees. In effect Delaware transfers funds from one pocket to another, and realistically makes direct payments to its former employees. The case, therefore, is quite unlike *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77 (3d Cir.1983) where the state paid benefits on behalf of a private employer.

In *Craig* the court conceded that the issue of set-off for unemployment benefits "is extremely close and one over which reasonable persons could differ." 721 F.2d at 82. In concluding that no set-off should be allowed, the court said, "[u]nemployment compensation most clearly resembles a collateral benefit which is ordinarily not deducted from a plaintiff's recovery." *Id.* at 83. Significantly, the court then made the point that, "[u]nder the collateral benefit rule, payment which a plaintiff receives for his or her loss from another source is not credited against the defendant's liability for all damages resulting from its wrongful or negligent act." *Id.* at 83. The *Craig* court relied on *NLRB v. Gullet Gin Co.*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951), in which the Supreme Court had denied a set-off and observed that payments of unemployment compensation were not made by the employer but by a third party, the state in that instance.

The case before us is more analogous to *Dillon v. Coles*, 746 F.2d 998 (3d Cir.1984), where the state had paid unemployment benefits to its former employee. We allowed a set-off, citing the recoupment provisions of the Pennsylvania statute. Because that basis of decision readily distinguished *Craig*, discussion of the collateral source rule was unnecessary. The majority gives *Dillon v. Coles* an unduly narrow reading by emphasizing the recoupment provision.

The facts here are clear enough. Delaware has paid, through unemployment benefits, part of the wages that plaintiff lost as a result of her unlawful discharge. By denial of a set-off, the state must now pay these same losses again. General principles of damage calculations are not vitiated by the absence of specific statutory provisions. The plaintiff is entitled to be made whole, but double payment is a windfall to her and an unwarranted penalty on the state. Particularly when the taxpayer's money subsidizes the windfall, the court should not condone such a result.