**Robert JIRUS, Plaintiff,**

v.

**CITY OF BERWYN, Defendant.**

**No. 86 C 8219.**

United States District Court,
N.D. Illinois, E.D.

April 26, 1989.

Frank A. Scafuri, LaGrange, Ill., for plaintiff.

Charles E. Hervas, Schirott & Associates, Itasca, Ill., for defendant.

Mark S. Stein and J. Dale Berry, Cornfield & Feldman, Chicago, Ill., for intervenor.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This case is before the court on motions *in limine* submitted by defendant and intervenor. Defendant having conceded liability, the only issues remaining before this court concern damages and reinstatement.

## FACTS

Plaintiff Robert Jirus was employed by the fire department of defendant, City of Berwyn (City). Pursuant to its ordinance mandating compulsory retirement, on July 3, 1986 (one day prior to his 60th birthday), the City involuntarily terminated plaintiff.

Plaintiff filed suit charging a violation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1982), and the City conceded liability. The case was originally assigned to Judge Getzendanner who, on March 31, 1987, entered a judgment order purportedly agreed to by all parties. Plaintiff was reinstated pursuant to that order.

There was disagreement, however, over whether Jirus had assented to certain other terms of the settlement agreement, namely whether the pension benefits he received while involuntarily retired should be subtracted from his backpay award. Judge Getzendanner submitted the dispute to be heard before a magistrate.

On February 9, 1988, this court vacated the order of March 31, 1987, pursuant to the recommendation of Magistrate Bucklo, and held that plaintiff lacked sufficient knowledge of the terms of the settlement agreement prior to accepting it. Also, the motion to intervene of the Board of Trust-ees of Firemen's Pension Fund of Berwyn, Illinois (pension fund), was granted.

This court requested both the City and the pension fund to file motions *in limine* on the question of damages. Plaintiff is entitled to backpay and, because the discrimination was willful, plaintiff is entitled to liquidated damages pursuant to 29 U.S. C. § 626(b) (1982). *See Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). The issues which remain are whether the pension benefits received by plaintiff should be recouped by the pension fund or be subject to offset from the backpay award, and whether plaintiff is entitled to prejudgment interest. Also before this court is the City's motion for a declaration of rights pursuant to 28 U.S.C. § 2201 (1982), requesting an order allowing it to discharge plaintiff.

## DISCUSSION

I. *Pension Benefits*

The parties have stipulated that plaintiff received $18,000 from the pension fund during the period of his involuntary retirement, and the fund argues for recoupment of those benefits. The City, however, contends that the benefits are subject to setoff from the backpay award.

The primary goal in assessing compensatory damages in an ADEA action is to restore the plaintiff to the economic state he would have been in but for the discrimination. *Kossman v. Calumet County,* 800 F.2d 697, 703 (7th Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 151 (1987), *overruled on other grounds, Coston v. Plitt Theatres,* 860 F.2d 834 (7th Cir.1988). A slight departure from this objective occurs where cases involve collateral source benefits. Collateral benefits are paid from a source independent of the employer. This payment does not discharge the employer's obligation but, rather, serves independent social policies such as financial assistance during retirement or while seeking new employment. *See National Labor Relations Board v. Gullett Gin,* 340 U.S. 361, 364, 71 S.Ct. 337, 339, 95

L.Ed. 337 (1951) (unemployment benefits are a collateral source benefit).

It is widely held that collateral benefits received by a victim of discrimination, such as employment insurance, need not be deducted from a successful plaintiff's backpay award. *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1429 (7th Cir.1986). The policy behind this doctrine is that it is better for the victim to receive a windfall than the perpetrator of discrimination. *Equal Employment Opportunity Commission v. O'Grady*, 857 F.2d 383, 389 (7th Cir.1988). In essence, the plaintiff enjoys "the rewards ... both of working and not working." *Id.*

The City of Berwyn Pension Fund is a state agency established pursuant to Ill. Rev.Stat. ch. 108½, ¶ 4–117 (1987). As such, the Fund is independent from the City of Berwyn and the collateral benefits doctrine would seem to prohibit offset. In similar cases, pension benefits have been treated as collateral source benefits. *O'Grady*, 857 F.2d at 391. However, the decision whether to offset or allow recoupment is left to the sound discretion of the district court. *Orzel v. City of Wauwatosa Fire Dept.*, 697 F.2d 743, 756 (7th Cir.1983), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680 (1983).

In a typical collateral benefits case, a windfall is conferred on the plaintiff because there is a missing claimant. In fact, those cases disallowing offset often make reference to the absence of the party entitled to the benefits. *See, e.g., O'Grady*, 857 F.2d at 391 ("claimants should be required to return to the Retirement Board the pension benefits they received"); *see also Hunter*, 797 F.2d at 1430 ("Hunter should be required upon collection of the judgment, to reimburse the welfare program").

This court need not confer such a windfall because the missing claimant, the pension fund, has intervened to recoup the benefits paid. The pension fund is rightfully entitled to those funds. Were it to have stayed out of the instant case and instituted an action against plaintiff, it most certainly would have prevailed in re-

covering these benefits. There should be no penalty for intervening. Thus we replicate the likely results of any hypothetical litigation and permit recoupment.

While plaintiff certainly contributed to the pension fund prior to his dismissal, those submissions cannot be considered sufficient to remove from this court's discretion consideration of whether to compel recoupment. Where plaintiffs have themselves insured against a particular risk, *e.g.*, the paying of premiums for disability insurance, it is inappropriate to deduct the money received under the policy from a tort award. Here, however, the City paid substantially more for the pension benefits than did the plaintiff. Section 4–118.1 of the firemen's pension statute requires each firefighter to contribute approximately 8% of his salary to the pension fund. Ill.Rev. Stat. ch. 108½ ¶ 4–118.1. The rest of the fund is contributed by the City and substantially exceeds, per capita, each firefighter's contribution. Section 4–118(a) specifies that cities must contribute

> (1) the normal cost of the pension fund, or 17.5% of the salaries and wages to be paid to firefighters for the year involved, whichever is greater, plus (2) the annual amount necessary to amortize the fund's unfunded accrued liabilities over a period of 40 years subsequent to January 1, 1980....

Ill.Rev.Stat. ch. 108½, ¶ 4–118(a). Thus the City's contribution, at a minimum, doubles that of any particular claimant, justifying a departure from traditional application of the collateral benefits rule.

Furthermore, ordering the plaintiff to return the pension benefits he received would be consistent with the goals of the ADEA —to make whole the victim of discrimination.

Plaintiff contends that recoupment is improper and invokes *Gelof v. Papineau*, 829 F.2d 452 (3d Cir.1987). In *Gelof*, the Third Circuit ruled that offsetting unemployment insurance from a backpay award is appropriate only where the legislature has provided a substantive cause of action enabling the offset. Since Delaware had no such statute, the court held it could not

deduct the unemployment insurance paid from the backpay award.

In effect, the *Gelof* decision permits offsets in order to avoid a future action for recoupment. As previously described, that would be the case here. The subsequent cause of action would be for, *inter alia*, restitution or breach of the collective bargaining agreement. Furthermore, *Gelof* appears to be factually distinct: the defendant-employer and the party seeking recoupment were both the same—the State of Delaware. The plaintiff had been dismissed from her position at the state's development office and she had received unemployment insurance from Delaware's own program. 829 F.2d at 454. In such circumstances, it is understandable why an enabling statute might be required. Were the state to decide that it wanted to permit itself (the defendant-employer in *Gelof*) to offset unemployment benefits, it could do so. But the courts have concluded that, absent an enabling statute, the defendant-employer has hands too unclean to reduce the award. Here, however, the pension fund has the requisite clean hands. Thus we need not isolate an enabling statute.

Further, the best interpretation of the pension statute would require the plaintiff to repay to the fund the benefits received. The backpay award in the instant case represents the restoration of the plaintiff to the employment status he would have held but for his involuntary retirement. This removes the plaintiff from the one category within the pension statute for which recoupment would be inappropriate—that of having been "no longer in service as a firefighter." *See* Ill.Rev.Stat. ch. 108½, ¶ 4–109. Instead, he will be considered to have been on active service for the period of his involuntary retirement. *Cf. Social Security Board v. Nierotko*, 327 U.S. 358, 365–68, 66 S.Ct. 637, 641–42, 90 L.Ed. 718 (1946) (interpreting the Social Security Act, "wages" includes backpay and "service" includes those periods for which an employee receives the backpay award).

To receive active service status for the period of involuntary retirement, however, plaintiff must repay the pension benefits

received. In addition, the City would also be required to make the statutory contributions specified. These payments will ensure the plaintiff receives service credit for his absence and that the pension fund is in the same financial condition it would have been in but for plaintiff's forced retirement. These payments also guarantee that the plaintiff returns without the limitations which attach to a "reentry into active service." *See* Ill.Rev.Stat. ch. 108½, ¶ 4–117.

We finally address plaintiff's contention that because the City and the fund are essentially the same entity, recoupment would benefit the wrongdoer. As a factual matter, we disagree. That certain members of the pension fund's board also serve as mayor, fire chief, and union representative, does not obscure the clearly independent legal statuses of the fund and of the City. Further, were plaintiff's claim considered, he would be without a remedy. The only basis for retaining the pension benefits is under the collateral benefits doctrine, an element of which is that the benefits at issue be derived from two independent sources. If the fund and the City were legally inseparable, the plaintiff would have merely experienced a cut in pay, a reduction from his prior wage to the amount of the pension benefits. The plaintiff's claim would therefore be limited to the difference between these two figures, and the City would have effectively set off the benefits from the backpay owed. Since we hold the City and the fund to be two separate legal entities, however, we need not explore this scenario further. Intervenor's motion *in limine* is granted.

## II. *Prejudgment Interest*

██ Plaintiff requests this court award him prejudgment interest in addition to backpay and liquidated damages. The Seventh Circuit has made clear that a prevailing plaintiff in an age discrimination action is not entitled to prejudgment interest when liquidated damages have been awarded. *Coston v. Plitt Theaters, Inc.*, 831 F.2d 1321 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988). The *Coston* court reasoned that awarding prejudgment interest in addition

to liquidated damages would provide relief beyond that which Congress contemplated. *Id.* at 1335. While one circuit has ruled otherwise, *Lindsey v. American Cast Pipe Iron Co.*, 810 F.2d 1094 (11th Cir.1987), the applicable precedent in this case—as well as courts from other circuits—finds prejudgment interest not recoverable. *See Blim v. Western Electric Corp.*, 731 F.2d 1473, 1479–80 (10th Cir.1984), *cert. denied*, 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984); *Rose v. National Cash Register Corp.*, 703 F.2d 225, 230 (6th Cir.1983), *cert. denied*, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983); *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1101–03 (8th Cir.1983); *Kolb v. Goldring, Inc.*, 694 F.2d 869, 875 (1st Cir.1982); *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109, 1114 (4th Cir.1981), *cert. denied*, 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981).

### III. *Reinstatement*

The City's motion for a declaration of rights argues that defendant should be allowed to mandatorily retire the plaintiff under the Age Discrimination in Employment Amendments Act of 1986 (1986 amendments). Section 3(a) of those amendments exempted from the general prohibition against age discrimination such actions

taken—(1) with respect to the employment of an individual as a firefighter or as a law enforcement officer and the individual has attained the age of hiring or retirement in effect under applicable State or local law on March 3, 1983, and (2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

29 U.S.C. § 623(i) (Supp.1986).

The 1986 amendments were passed in response to the Supreme Court's decision in *EEOC v. Wyoming*, 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983)—March 3, 1983 was the day after the Court rendered its opinion. *Wyoming* upheld Congress' 1974 expansion of the ADEA's definition of "em-

ployer" to include state and local governments. At issue was whether that extension threatened the "separate and independent existence" of states within the meaning of the Tenth Amendment and *National League of Cities v. Usery*, 426 U.S. 833, 841, 96 S.Ct. 2465, 2469, 49 L.Ed.2d 245. The Supreme Court held that, pursuant to the Commerce Clause, the protections afforded by the ADEA were constitutionally provided to municipal employees. *Wyoming*, 460 U.S. at 243, 103 S.Ct. at 1064. At the time of *Wyoming*, the ADEA covered workers between the ages of 40 and 70. 29 U.S.C. § 631, Age Discrimination in Employment Act Amendments of 1978, § 3(a), 92 Stat. 189.

The purpose of the 1986 amendments was "to provide relief to those jurisdictions which were forced to respond to the *Wyoming* case while at the same time ensuring that no lesser discrimination protection will be provided for these workers than what was in effect at the time the *Wyoming* case was decided [March 3, 1983]." 132 Cong.Rec. 16853–54 (1986) (statement of Senator Ford). In effect, "State and local governments would not be able to lower retirement age requirements below what was in effect as of March 3, 1983." *Id.* at 16853. The amendments repeal themselves on December 31, 1993,[1] effectively instituting a backward-looking seven-year exemption period for police and fire department employees, during which "studies will be undertaken to evaluate and propose criteria for physical and mental fitness tests for police officers and firefighters." *Id.* at 16852 (statement of Senator Heinz).

Our inquiry, therefore, centers on ascertaining the applicable state or local law on March 3, 1983—the day after *Wyoming* was decided. Defendant argues that the relevant law in effect was Berwyn's municipal ordinance, adopted in 1974 and enacted pursuant to the Illinois Municipal Code of 1961. Section 10–2.1–17 of the latter provides that

---

1. "Sec. 3. EMPLOYMENT AS FIREFIGHTER OR LAW ENFORCEMENT OFFICER

\* \* \* \* \* \*

(b) Termination Provision—The amendment made by subsection (a) of this section is repealed December 31, 1993."
29 U.S.C. § 623 note (Supp.1986).

[t]he age for retirement of policemen or firemen in the service of any municipality which adopts this Division 2.1 is 65 years, unless the Council or Board of Trustees shall by ordinance provide for an earlier retirement age of not less than 60 years.

Ill.Rev.Stat. ch. 24, ¶ 10–2.1–17 (1987). Were Berwyn's municipal ordinance the operative law (which provides for mandatory retirement at age 60), Jirus could be mandatorily retired as he is now 63 years old.

Plaintiff instead argues that the law in effect on March 3, 1983, was not Berwyn's ordinance but rather the Illinois Human Rights Act (IHRA). In essence, the IHRA prohibits most employers from adopting a compulsory retirement age by providing that it is a civil rights violation

[f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal or employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination.

Ill.Rev.Stat. ch. 68, ¶ 2–102 (1987). The Act defines unlawful discrimination as "discrimination against a person because of his or her ... age." *Id.* at ¶ 1–103(Q). "Age means the chronological age of a person who is at least 40 years old." *Id.* at ¶ 1–103(A). Plaintiff therefore contends that Berwyn's ordinance specifying mandatory retirement at age 60—as well as the cited provision of the municipal code—was preempted and therefore effectively repealed by the IHRA. Put succinctly, we agree.

Unfortunately, the issue's resolution rests on deciding a purely state law preemption issue, namely, whether the IHRA effectively repealed the municipal code provision. We look to Illinois rules of statutory construction to perform this inquiry.

One rule of construction requires that the legislature not be presumed to have engaged in meaningless behavior by enacting legislation. *See, e.g., Pliakos v. Illinois Liquor Control Commission,* 11 Ill. 2d 456, 143 N.E.2d 47 (Ill.1957). But that

does not help us here. The IHRA was amended in 1986 (IHRA amendments) to mirror the federal efforts:

Nothing contained in this Act shall prohibit ... [i]mposing a mandatory retirement age for firefighters or law enforcement officers if prior to December 31, 1993, the law enforcement officer or firefighter has attained the age of retirement in effect under applicable state or local law on March 3, 1983 and if such retirement action is taken pursuant to a bona fide retirement plan.

Ill.Rev.Stat. ch. 68, ¶ 2–104 (1987). According to one legislator, "House Bill 2164 authorizes mandatory retirement of police officers and firefighters at the age of 63 (sic). This Bill conforms with the current municipality codes." State of Illinois, 85th General Assembly, House of Representatives, Transcription Debate, 46th Legislative Day, May 14, 1987 at 173. Thus, in his view municipal law controlled. But the amendment in reality begs the question—state law now is whatever state law was in March 1983, without any legislative judgment as to what that means, despite the implied hope that earlier retirement dates would be upheld.

The Illinois Human Rights Commission administers the IHRA and normally courts can obtain interpretative guidance from the agency having expertise and responsibility for enforcement. But we have been unable to find anything which indicates that the Commission has taken a position on the issue. We are left, then, with other rules of statutory construction.

One such rule is that a specific enactment must prevail over more general laws relating to the same subject matter. *See, e.g., Moyer v. Board of Ed. of School District No. 186,* 391 Ill. 156, 62 N.E.2d 802 (Ill.1945). This would augur for holding the municipal code not preempted, because it explicitly deals with the mandatory retirement ages for police and firemen.

But another rule of construction requires reading the terms of a statute pursuant to their plain and commonly accepted meaning. With that in mind, we read the IHRA to be comprehensive in scope. By its

terms, in March 1983 the statute prohibited employers from adopting mandatory retirement ages of less than 70. *See* Ill.Rev. Stat. ch. 68, ¶¶ 1–103, 2–102 (1980). The legislature had defined those employers subject to the Act specially to include "[t]he State and any political subdivision, municipal corporation or other governmental unit or agency". Ill.Rev.Stat. ch. 68, ¶ 2–101(B)(1)(c) (1987). Finally, the Act itself expresses a desire to be comprehensive: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." Ill.Rev.Stat. ch. 68, ¶ 8–111(D) (1981). And while various exemptions were included (*e.g.,* mandatory pre–70 retirement permitted in cases where no specific factual basis justified a Bona Fide Occupational Qualification, *see* Ill.Rev.Stat. ch. 68, ¶ 2–104(1) (1987)), no comparable exemption for firefighters was inserted.

Furthermore, "[t]he cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature." *People ex rel. Hanrahan v. White,* 285 N.E.2d 129, 52 Ill.2d 70, *cert. denied sub nom., Splinter v. Hanrahan,* 409 U.S. 1059, 93 S.Ct. 562, 34 L.Ed.2d 511 (1972). As did the court in *White,* we look to the relevant legislative history. That history, for whatever reason, only partially elucidates the legislative intent. Our decision is, however, informed by the evaluations of Illinois courts. For example, in *Thakkar v. Wilson Enterprises, Inc.,* 120 Ill.App.3d 878, 881, 76 Ill.Dec. 331, 333, 458 N.E.2d 985, 987 (1st Dist. 1983), the court found that "[a] review of the detailed legislative scheme of the Human Rights Act persuasively suggests that the General Assembly intended for it to be the preemptive vehicle for the resolution of employment discrimination cases in Illinois."

Thus, preemption—that "where the [state] legislature has adopted a scheme for regulation of a given subject, local legislative control over such phases of the subject as are covered by State regulation ceases"—dictates that the local Berwyn ordinance give way. *Hutchcraft Van Serv. v. City of Urbana, et al.,* 104 Ill.App.3d 817, 823, 60 Ill.Dec. 532, 536–37, 433 N.E. 2d 329, 333–34 (4th Dist.1982). We therefore hold that the law in effect on March 3, 1983 was the IHRA and that plaintiff is entitled to the protections thereunder.[2]

The then existing IHRA rendered mandatory retirement below the age of 70 impermissible. Because it did not extend protection to those over the age of 70, the Act did not guarantee a job "in perpetuity," and neither does its application today. Rather, it would be illegal for the City to terminate the plaintiff on the basis of his age for another seven years—until he reaches the age of 70.[3] Because this decision does not rest on section 7(b) of the 1986 amendments—the preservation of existing causes of action—we do not put the City in the "incongruous position of legally enforcing its mandatory retirement age in its police and fire departments against all individuals, except the plaintiff" (def. mem. in supp. of City's mo. in limine at 5). Because any suit brought anew under the 1986 ADEA amendments would necessarily look to state law as of March 3, 1983, the case

---

2. The issue is not, as the City contends, whether today's "state law precludes the application of the retirement policy utilized by the City in March of 1983" (def. reply at 5). Present state law is relevant only for plaintiffs bringing suit under the IHRA today. In such circumstances, the IHRA amendments would, where applicable, control. But for Jirus' purposes, the only relevant state law is that which existed on March 3, 1983. And the then existing state law does not affect a separate state claim but rather helps ascertain the appropriate *federal* law under the 1986 ADEA amendments—an inquiry with a prominent state law *component.*

3. We do not rely on plaintiff's contention that the rights attendant to reinstatement prior to the 1986 ADEA amendments can be analogized to a proscriptive buyout. In sum, plaintiff cannot dictate that front pay to age 70 was required. Instead, it is within the discretion of the trial court to determine whether reinstatement is possible—an alternative to a buyout. Since Jirus has returned to work for the City, that determination has already been made and front pay was not awarded. The analogy to a proscriptive buyout is therefore inappropriate.

of each new plaintiff would be similarly decided.[4]

Because the law in effect renders illegal the discharge of plaintiff based on age, we need not review whether the City's retirement plan is bona fide within the meaning of the 1986 amendments.

## IV. *Liquidated Damages*

■ We decide here the very narrow issue of whether the pension amount paid to Juris should be subtracted from the backpay amount for liquidated damages purposes. As a general matter, the backpay award is doubled to derive the appropriate liquidated damages. 29 U.S.C. § 626(b) (Supp. IV 1986). We hold herein that the pension benefits should not be deducted prior to doubling the backpay.

Judge Getzendanner addressed a similar issue in *EEOC v. Cook County Department of Corrections,* No. 84 C 10886, slip op. at 3–4, 1987 WL 6286 (N.D.Ill. January 29, 1987). We recognize, as did Judge Getzendanner, that liquidated damages are punitive in nature. *See, e.g., Trans World Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). With that purpose in mind, she held that the 1986 ADEA amendments reduced the need to deter future violations. She therefore deducted the pension benefits prior to doubling. *Cook County Department of Corrections,* slip op. at 3–4. We respectfully disagree.

We do not read the awarding of liquidated damages as deterring only employer-specific conduct. Assessment of liquidated damages instead denotes that willful violations of the ADEA will not be tolerated. That particular conduct may subsequently be legalized does not make the decision to willfully violate the law any less worthy of deterrence. To hold otherwise would permit potential defendants to violate the law today in the hope and/or belief that the law will change to their benefit. We prefer

instead to deter discrimination based on age *in toto.*

More specifically, we determine *supra* that the 1986 amendments freeze the March 3, 1983 status quo—a scenario which maintains Illinois' prohibition of discrimination based on age pursuant to the IHRA then in effect. Thus, for the period prior to 1993, when the amendments repeal themselves, the need for effective deterrence has not been significantly changed. Full liquidated damages are therefore appropriate.

Judge Eschbach's thoughtful and extended opinion in *Coston v. Plitt Theaters, Inc.,* 831 F.2d 1321 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1471, 99 L.Ed.2d 700 (1988), is not to the contrary. In *Coston,* the plaintiff's liquidated damage award was calculated by first deducting outside wages from the backpay figures. "[A]ny amounts earned in mitigation of the backpay compensatory award must be deducted prior to doubling." *Id.* at 1330. Here, however, we have pension benefits —a far cry from the sort of mitigation or search for alternative employment which the ADEA requires. And as explained *supra,* the plaintiff is here required to return the benefits received during the involuntary retirement period to the pension fund. The wages earned in mitigation in *Coston* are hardly analogous.

## CONCLUSION

For the foregoing reasons, defendant's motion is denied and intervenor's motion is granted. Plaintiff is directed to return to the pension fund the benefits received by him during the period of his involuntary retirement. We also find that the mandatory retirement of plaintiff, at the present time, would violate the ADEA, as amended.

---

**4.** We are forced to decide the state law claim because that inquiry is compelled by the ADEA. But the issue has not been addressed directly by the state courts or by the Commission. It has been argued by the parties here only as one issue among several respecting an individual claim, and our decision necessarily has an impact considerably broader than resolving the claim at issue. We therefore invite further argument on the state law issue if the parties can advance legislative history or other matters which have not been considered by the court.