Robert G. JORDAN, Plaintiff,

v.

CCH, INC., Defendant.

No. CIV.A. 01–0053.

United States District Court,
E.D. Pennsylvania.

Oct. 7, 2002.

Ronald H. Surkin, Richard, Di Santi, Gallagher, Schoenfeld & Surkin, Brian P. Kirby, Media, PA, for Plaintiff.

Elizabeth S. Fenton, Hangley Aronchick Segal & Pudlin, Philadelphia, PA, Kristan Peters, Pillsbury Winthrop LLP, Thomas F. Clauss, Jr., Stamford, CT, for Defendant.

## MEMORANDUM AND ORDER

SCHILLER, District Judge.

### I. INTRODUCTION

After a jury trial before this Court in the above-captioned matter, judgment was entered in favor of Plaintiff on July 22, 2002 as to Plaintiff's claims under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"). In accordance with special interrogatories to the jury, this Court awarded Plaintiff Robert Jordan $260,000.00 in lost earnings and benefits accruing up to the time of trial and $90,000.00 in compensatory damages. Now before the Court is Plaintiff's petition for counsel fees and costs,[1] Plaintiff's motion to mold the verdict to include prejudgment interest and damages resulting from tax consequences, and Defendant's motion to amend judgment and for remittitur.

For the reasons that follow, I grant in part and deny in part Plaintiff's attorney fee petition; grant in part and deny in part Plaintiff's motion to mold the verdict to include prejudgment interest and damages from tax consequences; and grant in part and deny in part Defendant's motion to amend judgment and for remittitur.

### II. PLAINTIFF'S PETITION FOR COUNSEL FEES AND COSTS

 Petitioner seeks an award of $195,299.25 in fees and $19,147.80 in costs, representing the work of Ronald Surkin, Brian Kirby, other assisting attorneys, and a paralegal. In addition, Plaintiff seeks a supplemental award of $7,571.00 in fees and $2,292.22 in costs incurred since the initial filing of his petition. Under the ADEA and the PHRA, a "prevailing party" is entitled to an award of reasonable

---

1. Plaintiff's Petition for Counsel Fees and Costs will henceforth be abbreviated "Pl.'s Fee Pet."

attorney's fees. *See Blum v. Witco Chem. Corp.*, 829 F.2d 367, 377 (3d Cir.1987); *Becker v. ARCO Chem. Co.*, 15 F.Supp.2d 621, 626 (1998); *see also Rego v. Arc Water Treatment*, Civ. A. No. 94–3734, 1998 WL 334489, *1, 1998 U.S. Dist. LEXIS 9635, at *6 (E.D.Pa. June 29, 1998), *aff'd*, 181 F.3d 396 (3d Cir.1999); 43 P.S. § 962(c)(4)(c.2)(2002). The party seeking attorney's fees has the burden to prove that the request is reasonable. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir.1990). A reasonable attorney's fee can be calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir.2001). This figure is called the lodestar. Although the lodestar is presumed to yield a reasonable fee, the district court has considerable discretion to adjust the lodestar upward or downward once the opposing party objects to the fee request.[2] *See Rode*, 892 F.2d at 1183 (citing *Bell v. United Princeton Props.*, 884 F.2d 713, 721 (3d Cir.1989)).

### A. Reasonableness of Hourly Rates

A court determines a reasonable hourly rate by assessing the prevailing party's attorneys' experience and skill compared to the prevailing market rates in the relevant community for lawyers of reasonably comparable skill, experience, and reputation. *See Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir.2001); *see also Student Pub. Interest Research Group of*

N. J., Inc. v. AT & T Bell Labs., 842 F.2d 1436, 1450 (3d Cir.1988). Additionally, a court can take into consideration the complexity of the case, determined by "examining the difficulty counsel faced in establishing proof and in meeting the litigation strategy of defendants." *Becker v. ARCO Chem. Co.*, 15 F.Supp.2d 621, 632 (E.D.Pa. 1998). The prevailing party bears the burden of showing that the requested hourly rates are reasonable and can satisfy this burden by the submission of affidavits of attorneys with personal knowledge of the hourly rates customarily charged in the relevant market. *See Becker*, 15 F.Supp.2d at 628 (citing *Washington v. Phila. Ct. of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir.1996)). The opposing party must show a sufficient basis to contest the reasonableness of the fees. *See Orson, Inc. v. Miramax Film Corp.*, 14 F.Supp.2d 721, 724 (E.D.Pa.1998). While an attorney's usual billing rate is a starting point for a court's determination, it is not dispositive. *See Maldonado*, 256 F.3d 181, 184–85 (citing *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir.1995)). The hourly rates requested for principal counsel, Ronald Surkin and Brian Kirby will be analyzed separately.[3]

### 1. Ronald Surkin, Esq.

Plaintiff has requested a $325.00 hourly rate for lead trial counsel Ronald Surkin. Defendant contests the reasonableness of this hourly rate for Mr. Surkin on two grounds. First, Defendant asserts the del-

---

2. In adjusting a lodestar amount, a district court may consider such factors as "the time and labor required," "the skill requisite to perform the legal service properly," "the experience, reputation, and ability of the attorneys," and "the 'undesirability' of the case." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir.1983) (citing *Hensley*, 461 at 430 n. 3, 103 S.Ct. 1933).

3. Defendant does not specifically object to the hourly rate for Mr. DiSanti, Ms. DeMis, Ms. Krull, Ms. Buckles, or the rate requested for the paralegal. Defendant does, however, generally object to the overstaffing of the case as well as the clerical nature of work by their paralegal. These issues will be examined below.

egable nature of several of Mr. Surkin's tasks warrants a lower hourly rate. Second, Defendant asserts that Mr. Surkin's hourly rate is erroneously enhanced on the ground of contingency.

### a. Delegable Nature of Mr. Surkin's Work

■ Defendant asserts that Mr. Surkin's rate should be reduced to account for the clerical and associate level work performed by lead counsel.[4] Charging maximum rates for tasks that can be performed effectively by supporting staff or associates is not permissible. *See Loughner*, 260 F.3d at 180; *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir.1983) ("[R]outine tasks, if performed by senior partners in large firms, should not be billed at their usual rates."). A court must to exclude hours that reflect "the wasteful use of highly skilled and highly priced talent for matters *easily* delegable to non-professionals or less experienced associates". *Ursic*, 719 F.2d at 677 (emphasis added). This proposition, however, presupposes that the attorneys charging maximum rates readily have junior associates and supporting paralegals at his or her disposal. *See Poston v. Fox*, 577 F.Supp. 915, 919–20 (D.N.J.1984) (finding that it is not always possible to delegate in small office); *see also Roldan v. Phila. Hous. Auth.*, Civ. A. No. 95–6649, 1999 WL 1167658, *4, 1999 U.S. Dist. LEXIS 19093, at *14–15

(E.D.Pa.1999) (holding that reduction in rates is unwarranted in office that is understaffed and no less experienced attorney was available to perform tasks).

■ As Mr. Surkin detailed in his supplemental declaration, his firm is a small firm that, during the majority of the case, only had one associate. (Surkin Supplemental Dec. at ¶ 3.) Additionally, Mr. Surkin attested that at the time of this case, his firm had five or six partners that, in essence, had their own practices. (*Id.*) For each of the tasks that Defendant contests, Plaintiff explains, in detail, the reasons that these tasks were not easily delegable and constituted legal services that required his attention. (Plaintiff's Reply Memorandum ("Pl.Reply") at 4–7), *see also Roldan*, 1999 WL 1167658, *5, 1999 U.S. LEXIS 19063, at *14 (holding essentially legal tasks do not require delegation).

Alternatively, when looking at the entries referred to by Defendant, it is ironic that most of what Defendant objects to are tasks that it created. This case was highly contentious, but more so because of the demeanor of counsel than because of the merits of the case. Many of the costs and fees incurred were the result of Defense counsel's unrelenting use of discovery and motion practice that required response by Plaintiff's counsel. Defendant's counsel took full advantage of the Federal Rules of Civil Procedure and now seeks to portray

---

4. Specifically, Defendant points to the following "associate" level tasks that Mr. Surkin preformed: (1) respond to motion for leave to file counterclaim; (2) respond to motions to compel and for protective order; (3) research and draft answer to motion to file counterclaim; (4) prepare answer to motion for sanctions; (5) answer motion for sanctions; (6) prepare declarations re: motion for sanctions; (7) revisions to answer to motion for sanctions; (8) prepare answers to motions in limine; (9) respond to motions in limine; and (10) respond to motions in limine. (Defendant's Opposition to Plaintiff's Petition, Ex.

C.) In addition, Defendant asserts that the following tasks performed by Mr. Surkin were clerical in nature and should not be compensated: (1) "Discovery: telephone conference with L. Ceccoli; telephone conference with client; conference in office with B. Kirby; review witness file; *arrangements for Lobascio deposition;*" (2) "Prepare for Robert deposition; several telephone *conferences with* opposing counsel, local counsel in Chicago, and *court reporter;* (3) Telephone conference with Andy Verizilli to prepare for his deposition; *gather documents* and correspondence to Verizilli re: same." (*Id.*)

Plaintiff's petition for fees as excessive and unreasonable.[5] In light of explanations given in Mr. Surkin's supplemental declaration, the nature of Mr. Surkin's small firm, and the contentious nature of the case, I find that Mr. Surkin could not easily delegate the tasks specified by Defendant and thus, a reduction of Mr. Surkin's rates as requested by the Defendant is not warranted on this ground.

### b. Contingency Enhancement & Community Market Standard

■ Defendant opposes the enhancement of Mr. Surkin's rate based on the contingency nature of the case. In addition, Defendant argues that Mr. Surkin's usual billing rate should be the starting point for the Court's determination of a reasonable rate under the prevailing market. Mr. Surkin's stated hourly rate is "typically $250 to $275 per hour." (Surkin Aff. ¶ 8.) Mr. Surkin, however, requests an hourly rate of $325.00. To support this rate enhancement as reasonable, Mr. Surkin refers to the Community Legal Services, Inc.'s Schedule of Hourly Rates ("CLS fee schedule"), three affidavits from attorneys in the community market, and the contingency nature of the case. (Pl. Fee Pet. ¶ 10; Surkin Aff. ¶¶ 8–11.)

■ Although "contingency multipliers are not permitted for fees awarded pursuant to fee shifting statutes," *Goodman v. Pennsylvania Turnpike Commission*, 293 F.3d 655, 677 (3d Cir.2002) (citing *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)), I find Mr. Surkin's rate enhancement reasonable for the foregoing reasons. Mr. Surkin has over 30 years of litigation experience, and 18 years of those years litigating all as-

pects of employment law. Among his other accomplishments, he has frequently served as a lecturer on employment law topics and as an adjunct professor in trial advocacy in Temple Law School's L.L.M. program. (Pl.'s Fee Pet. Ex. 1.) According to the CLS fee schedule, attorneys with over 25 years of litigation experience typically earn between $300.00 and $350.00 per hour. (Pl.'s Fee Pet. Ex. B.) *See Maldonado*, 256 F.3d at 187–88 (approving CLS fee schedule). The United States Court of Appeal for the Third Circuit has noted that the CLS fee schedule is "a fair reflection of the prevailing market rates in Philadelphia." *See Maldonado*, 256 F.3d at 187–88 (approving of CLS fee schedule). Additionally, Plaintiff submitted three declarations from attorneys with personal knowledge of the current market rates for attorneys in Philadelphia's employment law arena that attested to the reasonableness of Mr. Surkin's requested rate. (Pl. Fee Pet., Ex. 2, 3, and 4.) Defendant, however, submitted no contrary evidence, declarations or affidavits regarding the reasonableness of Mr. Surkin's rate. *See Gentner v. Cheney Univ. of Pa.*, Civ. A. No. 94–7443, 1999 WL 993999, *5, 1999 U.S. Dist. LEXIS 16796, at *14–15 (E.D.Pa. Nov.1, 1999) (holding that requested rate should not be adjusted downward when " 'the plaintiff has met his prima facie burden under the "community market rate" lodestar test, and the opposing party has not produced contradictory evidence' ") (citing *Ballen v. Martin Chevrolet–Buick*, Civ. A. No. 94–484, 1998 WL 1013874, at *2, 1998 U.S. Dist. LEXIS 22537 (D.Del. Sept. 17, 1998)) (quoting *Washington v. Phila. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir.1996)).

---

**5.** For example, Defendant complains that Mr. Surkin responded to motions in limine. As Plaintiff's counsel explains, Defendant had filed ten motions in limine that needed to be responded within one week. (Surkin Supple-

mental Dec. ¶ 6.) Due to the nature of the firm and the time constraints on counsel, I find it reasonable that he worked on the response to five of these motions himself while Mr Kirby worked on the other five.

Finally, over twenty months have passed between the time this suit was filed and the date the jury returned its verdict. Although this case did not raise any novel legal issues, Plaintiff was pitted against an unusually vigorous opponent. *See Becker*, 15 F.Supp.2d at 632 (holding that complexity of case can be determined by "examining the difficulty counsel faced in establishing the proof and in meeting the litigation strategy of defendants"). During the course of pleading and discovery, Plaintiff had to respond to at least four contested motions by Defendant. In addition, Plaintiff had to respond to ten motions in limine filed by Defendant, many of which raised technical evidentiary issues. In the face of this opponent, Mr. Surkin was required to expend more effort and exhibit more skill than normally required for a case of this type. *See Ursic*, 719 F.2d at 677 (finding "time and labor required" and "skill requisite to perform legal services properly" are factors to consider). Thus, I find that Mr. Surkin's rate is not enhanced based on the contingency nature of the case; rather, Mr. Surkin's hourly rate of $325.00 is reasonable in light of the CLS fee schedule, the declarations submitted by colleagues in his field, and the time, labor, and skill required to litigate this case. (Pl.'s Fee Pet. Exs. 2, 3.)

### 2. Brian Kirby, Esq.

Plaintiff has requested a $220.00 hourly rate for counsel Brian Kirby, Esq. First, Defendant requests a reduced rate for Mr. Kirby because he performed junior associate level and clerical tasks.[6] Second, Defendant objects to Mr. Kirby's rate because his actual billing rate is not supported by the evidence. Although a usual billing rate is the starting point for

determining a reasonable hourly rate, the Third Circuit has held that "it is not dispositive." *Maldonado*, 256 F.3d at 187. The prevailing party's burden can be satisfied by affidavits from attorneys with personal knowledge of customary rates or, if the prima facie burden is not met, a court has discretion to determine a reasonable hourly rate. *See Becker*, 15 F.Supp.2d at 628 (citing *Windall*, 51 F.3d at 1185 and *Washington*, 89 F.3d at 1036).

Under both the supporting declaration submitted by Plaintiff and the CLS fee schedule, Mr. Kirby's rate is reasonable. Mr. Kirby has 12 years of litigation experience, several of these years were spent doing labor and employment work. (Pl.'s Fee Pet. Ex. F.) According to CLS fee schedule, attorneys with between 11 and 15 years of litigation experience typically earn between $220.00 and $260.00 per hour. (Pl.'s Fee Pet. Ex. B.) Similarly, Plaintiff's submitted a declaration of an attorney in the community market that attested to the rate requested for Mr. Kirby. (Pl.'s Fee Pet.' Ex. 2.) Again, no evidence, affidavit or declaration was submitted to the contrary by Defendant. *See Gentner*, 1999 WL 993999, *5–6, 1999 U.S. Dist. LEXIS 16796, at *14–15. In light of the supporting declaration and the CLS fee schedule, Mr. Kirby's merits $220.00 an hour. (Surkin Aff. Ex. B. and Pl.'s Fee Pet. Ex. 2.)

### B. Reasonableness of Time Expended

A prevailing party may request fees for work that is " 'useful and the type ordinarily necessary to secure the final result obtained.' " *Windall*, 51 F.3d at

---

**6.** For the reasons stated above, I find it unreasonable to reduce Mr. Kirby's rate to reflect a junior associate level rate based on this contention. In addition, the amount of time that Defendant contests as clerical or parale-

gal work is de minimis and thus, I find it unreasonable to reduce his overall rate. I will, however, make the necessary reduction when determining the reasonableness of the hours expended.

1189 (quoting *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 560–61, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). A court has "the affirmative function" of "review[ing] the time charged to decided whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Maldonado,* 256 F.3d at 184 (citing *Windall,* 51 F.3d at 1188). The court, however, cannot generally reduce hours *sua sponte,* rather objections must be specific for the court to reduce the amount of fees requested. *See United States v. Eleven Vehicles,* 200 F.3d 203, 211–212 (3d Cir.2000) (citing *Cunningham v. City of McKeesport,* 753 F.2d 262, 266 (3d Cir.1985), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986), *and reinstated,* 807 F.2d 49 (3d Cir.1986)). Defendant contests the reasonableness of the time expended by Plaintiff's counsel because it posits that approximately fifty percent of the hours billed are attributable to non-ADEA claims. In addition, Defendant claims that a reduction is warranted because there was duplicative and excessive hours, overstaffing, and hours spent on clerical matters.

### 1. Non ADEA Claims

■ Plaintiff's complaint included claims under the ADEA, PHRA, ERISA and breach of contract. Plaintiff's ERISA and breach of contract claims settled shortly before trial. Defendant contends that a fifty percent reduction of hours expended is warranted for the time prior to the settlement of these claims. Where compensable and non-compensable claims share a "common core of facts or related legal theories, or where counsel's time is dedicated to litigation as a whole," a court is not required to reduce the lodestar value. *Northeast Women's Ctr. v. McMonagle,* 889 F.2d 466, 476 (3d Cir.1989) (citing *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933). Here, all of Plaintiff's claims came from a common set of facts. For instance, Plaintiff alleged that he was not credited with sales he made during his employment. Plaintiff set out to prove that Defendant intentionally failed to credit these sales in order to affect Plaintiff's sales ranking and to justify a pretextual basis for his discriminatory termination based on age. Similarly, the failure to give Plaintiff credit for these sales resulted in a loss of commissions, which was the basis for his breach of contract claim, and a loss of pension credits, which was the basis for his ERISA claim. Plaintiff's counsel did not have to develop any additional facts for the ERISA and breach of contract claims. Thus, considering interrelatedness of facts underlying all Plaintiff's claims, I find that a reduction is not warranted on this ground.

### 2. Duplication of Hours

Defendant's specific objections regarding the duplication of hours requested are as follows:[7] (1) Conference call with the Court (Brian Kirby: .5 hours); (2) Motions for Sanctions Hearing (Brian Kirby: 2.0 hours); (3) Conference with Bob Jordan During Administrative Phase (Alexander DiSanti: 2.1 hours); (4) Preparing for PHRC Fact Finding Conference (Ronald Surkin: 3.0 hours) and (5) all of Mr. Kirby's trial time. I will deduct .5 hours from

---

7. Plaintiff has conceded to the reduction of many of the hours objected to in Defendant's Opposition, including: (1) Reviewing of the Complaint (Ronald Surkin: 3.0 hours, Alexander DiSanti, .3 hours); (2) Lou Cecolli Interview (Brian Kirby: .7 hours); (3) Harry Cabot Interview (Brian Kirby: 0.5 hours); (4) Donna Alosio Interview (Brian Kirby: .5 hours); (5) Telephone Call with Harry Cabott (Brian Kirby: .2 hours); and (6) Kevin Robert Deposition (Brian Kirby: 1.7 hours). These hours will be reduced accordingly.

Brian Kirby's time for participating in a conference call with the Court on December 11, 2001 and 2.0 hours for the conference regarding sanctions on March 21, 2002. Although this case was highly contentious, it was not the Court's intention to require Mr. Kirby's involvement in these conferences regarding a discovery dispute and the motions for sanctions. A deduction is also warranted for the time Mr. DiSanti spent in the initial conference with Mr. Jordan and Mr. Surkin. While Mr. Jordan and Mr. DiSanti may have been long-time friends, this fact does not explain the need to double bill for legal services that Mr. Surkin rendered to Mr. Jordan at this time and thus, I find them to be duplicative. I find that Mr. Surkin's time preparing for the fact-finding conference to be reasonable. As the senior attorney on the case, it was appropriate for him to advise Ms. Krull before she attended the conference alone. The fact that Mr. Surkin did not attend the fact-finding conference displays restraint in unnecessarily running up hours.

 Finally, I find all of Mr. Kirby's time during trial to be reasonable and not duplicative. First, I think that it is reasonable to look to the number of attorneys used by the defendant at trial in order to gauge the appropriate number of Plaintiff's attorneys to attend such events. *See Finch v. Hercules Inc.*, 941 F.Supp. 1395, 1426 (D.Del.1996) (citing *Coalition to Save Our Children v. State Bd. of Educ.*, 143 F.R.D. 61, 64 (D.Del.1992)) ("what is sauce for the goose is sauce for the gander"). Defendant had two partners attending the entire trial as well as an associate attending several days. Second, Mr. Kirby played a significant role in this litigation from the beginning. He was responsible for drafting the Complaint, handling the paper discovery, reviewing depositions and obtaining affidavits in preparation for Plaintiff's response to Defendant's anticipated summary judgment motion (which

was denied as untimely), responding to several motions in limine, and assisting Mr. Surkin with his trial preparation. At trial, he participated actively in the conference with the Court on the jury charge. He prepared several witnesses, read depo- sition testimony into the record, and assisted with the paper-intensive nature of putting on Plaintiff's case, which included over one hundred exhibits. Thus, I find his time spent at oral argument and at trial to be reasonable.

### 3. Overstaffing

Defendant contends that because the Plaintiff has overstaffed the case, Plaintiff should not be able to collect for the time of Mr. DiSanti, Ms. DeMis, Ms. Krull, and Ms. Buckles. Plaintiff concedes a .4 hour reduction of Mr. DiSanti's time spent during the administrative phase and his time will be adjusted accordingly. Regarding the rest of these attorneys' time, I find no merit in Defendant's contention. Defendant cites *ACLU v. Barnes*, 168 F.3d 423, 432–36 (11th Cir.1999) to support his contention. Even if this case were controlling, it is distinguishable because the extra attorneys here have not excessively billed. While I agree that having an excessive amount of attorneys on one case is unreasonable, the amount of hours that Mr. DiSanti, Ms. DeMis, Ms. Krull, and Ms. Buckles billed clearly exhibits Plaintiff's counsel's restraint in doing just that.

### 4. Excessive Hours

Defendant contends that certain hours spent by Plaintiff's counsel were excessive. Specifically, Defendant asserts that nineteen hours in preparation for Mr. Renninger's deposition and five hours for Mr. Robert's deposition was excessive. I find that these hours were appropriate considering the importance of these depositions. The gravity of Mr. Renninger's testimony is

exhibited in the length of his deposition, lasting from 9:30 a.m. to 6:00 p.m. with 40 exhibits. Thus, I find it reasonable that Mr. Surkin took the time to prepare for these key witnesses' depositions.

Defendant also objects to hours spent during the administrative phase of Plaintiff's case. I find it unreasonable that Defendant objects to the time spent with client during the administrative phase of his case. First, these hours were brought to the Court's attention numerous times and have already been addressed.[8] *See Hensley,* 461 U.S. at 437 & n. 12, 103 S.Ct. 1933 (holding that request for attorney's fees should not result in a "second major litigation"). Second, the administrative phase is an important part of the case that presents a potential alternative to unnecessary litigation. *See Wolk v. Saks Fifth Ave.,* 728 F.2d 221, 224 (3d Cir.1984) (articulating "[t]he PHRA embodies a discrete, comprehensive administrative procedure, including conciliation and negotiation."); *see also Tlush v. Mfrs. Res. Ctr.,* Civ. A. No. 02–235, 2002 WL 1748194, *3–5, 2002 U.S. Dist. LEXIS 13726, at *11–16 (E.D.Pa. July 24, 2002) (discussing importance of administrative remedies for PHRA and ADEA claims). This time (7.6 hours) spent by counsel with his client included the initial fact gathering of the case that was essential for the PHRC fact finding conference. Thus, I find this time to be reasonably spent.

### 5. Nature of Ms. Chin's and Mr. Kirby's Entries

■■■ Defendant objects to the clerical nature of entries for Mr. Kirby and counsel's paralegal, Ms. Chin. (Def.'s Opp., Ex. I, J.) Plaintiff concedes three entries of Ms. Chin's time that will be adjusted

accordingly.[9] For the remainder of Ms. Chin's entries, Plaintiff argues that they reflect paralegal work, including organizing and indexing discovery materials, and that entries regarding copying reflect simultaneous paralegal work on discovery matters. Clerical tasks should not be billed at senior associate or paralegal rates. *See Missouri v. Jenkins,* 491 U.S. 274, 288, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1988) (holding "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"), *see also Halderman v. Pennhurst State Sch. & Hosp.,* 49 F.3d 939, 942 (3d Cir. 1995) (holding it is not appropriate to allow "the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals"). To the extent that these tasks were performed by Ms. Chin in order to reduce the time that any of the attorneys would have to organize and copy discovery materials, I find that Ms. Chin's time is reasonable. *See Jenkins,* 491 U.S. at 288 n. 10, 109 S.Ct. 2463 (stating "paralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate"). While copying alone is a purely clerical task, if it is performed in the context of organizing and indexing discovery material for attorneys, it clearly falls within a paralegal's duties and thus, is compensable.

At the same time, I believe some of Mr. Kirby's bundled time should be reduced because of its purely clerical nature. Some of Mr. Kirby's tasks include faxing or scheduling that I consider to be purely clerical. Accordingly, I will reduce the following entries by either the Defendant's

---

8. The Court has already addressed and will reduce 2.5 hours of Mr. DiSanti's time and 3.0 hours of Mr. Surkin's time during this phase of the case. *See supra* Parts B.2 & B.3.

9. As per Plaintiff's concession, Ms. Chin's entries on 10/9/01 (0.5 hrs.), 1/29/02 (1.0 hrs.) and 7/10/02 (2.50 hrs.) will be deducted.

approximation or the actual time provided by Plaintiff in his Reply. The following reductions will be made:

| Date | Description of Task | Hours Excluded |
|---|---|---|
| 04/03/01 | Faxed letter requesting postponement . . . telephone call to Singer re: same | .30 |
| 06/28/01 | Conference with Ann Chin re: RHS availability for Renninger Deposition | .10 |
| 8/10/01 | . . . Fax letter to Peters . . . | .10 |
| 11/15/01 | Telephone Calls to Booz Allen re: scheduling call with General Counsel Sal Bianco | .20 |
| 12/07/01 | . . . telephone call to client re: status of case and deposition availability on 12/12; conference with Anne re: same | .20 |
| 01/03/02 | Telephone call to Sal Bianco's office re: need for check to cover costs of Booz Allen production or documents in response to subpoena; conference with Kelly re: obtaining check for costs; draft and fax letter to Bianco attacking check for costs | .60 |
| 01/18/02 | Telephone call to Bonnie Rafel re: securing conference room for Grimm deposition | .10 |
| 01/25/02 | . . . telephone call and forward e-mail attaching Motion package to PHS for filing | .30 |
| 06/06/02 | Telephone calls to John Frank, Donna Aloisio, Lou Ceccoli re: availability for trial | .30 |
| 06/17/02 | . . . telephone calls to client and trial witnesses re: rescheduling of trial | .50 |
| 06/28/02 | Prepare list of trial witnesses for forwarding of subpoenas; telephone calls to Aloisio, Frank, and Ceccoli confirming availability as trial witnesses | .70 |
| | **Total:** | **3.4** |

The majority of remaining tasks that Defendant points to either involve calls with opposing counsel, the deputy of the Court, or pertain to discovery matters and thus, I find it reasonable that Mr. Kirby carried out these tasks.

▮ In addition, Defendant characterizes several entries of Mr. Kirby's time as paralegal work. These entries seems to fall within the "gray area of tasks that might appropriately be performed by either an attorneys or a paralegal." *Id.* The Supreme Court has given some guidance as to what constitutes appropriate parale-gal tasks: "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Id.* Although many of the entries that Defendant contests seem to fall within these categories, a few entries involved calls with opposing counsel or investigators that I find it appropriate for Mr. Kirby to have handled in his capacity as Plaintiff's counsel.[10] (Def.'s Opp., Ex. I.) Thus, only 3.5 hours of Mr. Kirby's time will be billed at the rate of $75.00 to reflect the nature of

10. For example, at least one entry reflects Mr. Kirby's efforts in order to retain investigators in locating necessary witnesses.

these tasks. *See Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pa.*, 762 F.2d 272, 279 (3d Cir. 1985) (awarding counsel fees at paralegal rate for "minor" work), *rev'd on other grounds*, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

## C. Downward Adjustment of the Lodestar

■■■ First, Defendant argues that I should adjust the lodestar downward because Plaintiff achieved limited success. Defendant defines limited success by the relief Plaintiff claimed was owed to him compared to the verdict obtained. The Supreme Court has held that the success factor of the lodestar determination is not a "mathematical approach." *See Windall*, 51 F.3d at 1189–90 (citing *Hensley*, 461 U.S. at 435 n. 11, 103 S.Ct. 1933). "Nor is it significant that the prevailing plaintiff did not receive all the relief requested." *Hensley*, 461 U.S. at 436 n. 11, 103 S.Ct. 1933. Rather, the determination should focus on the "overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933.

Plaintiff achieved a verdict in his favor on liability on his age discrimination claim. The actual amount of the verdict was $260,000.00 in backpay and $90,000.00 for compensatory damages for his mental anguish, emotional distress, embarrassment, or humiliation as a result of the age discrimination. The fact that the jury awarded compensatory damages in this amount alone speaks volumes to rebut Defendant's purely mathematical argument that Plaintiff achieved limited success. Plaintiff requested 758.32 hours in attorney and paralegal time. When comparing the verdict to the amount of hours expended, considering the vigorousness with which Defendant's counsel contested this case, I find that Plaintiff's counsel achieved success for

their client and no downward adjustment is warranted.

Second, Defendant argues that the Court should find the fee request unreasonable in light of the amount of attorneys' fees Plaintiff requested in his settlement letter. It is questionable if the letter is even relevant to the Court's determination. Despite claiming that "weight of authority" allows the Court to look at the settlement letter, Defendant cited no controlling law on point. (Defendant's Surreply, at 2.) In fact, the only case cited from the Eastern District of Pennsylvania rejected the admission of evidence of settlement negotiations for the purpose of establishing the unreasonableness of Plaintiff's counsels request for fees. *See Gaffney v. Allentown*, Civ. A. No. 97–445, 1998 WL 32758, *1, 1999 U.S. Dist. LEXIS 242, at *1 (E.D.Pa. Jan.7, 1998) (holding that Federal Rule of Evidence 408 prohibits admission of such evidence for purpose of establishing unreasonableness of Plaintiff's counsel's request for fees). Second, even if the Court considers the settlement letter, Plaintiff's counsel clearly stated therein that the amount requested was "probably an underestimate of the fee award . . . ." Therefore, I will not consider this settlement letter in determining whether Plaintiff's counsel's fee petition is reasonable.

## D. Supplemental Attorneys' Fees and Costs

Plaintiff requests $7,571.00 in fees and $2,292.22 in costs to supplement the request put since his initial petition. Defendant does not object to the amount of time claimed by counsel in their supplemental fee petition. Defendant does object, however, to the thirteen entries in Plaintiff's supplemental fee petition for costs for Overnight Delivery Services on August 15, 2002. A prevailing party is entitled to " 'costs' connected with litigating their

claims as long as the costs are reasonably and necessarily incurred." *Becker,* 15 F.Supp.2d at 635 (citing *Planned Parenthood of Southeastern Pa. v. Casey,* 869 F.Supp. 1190, 1201 (E.D.Pa.1994)). "Compensation is appropriate if the incurred costs are not unreasonable, unnecessary, or inadequately documented." *Id.* (citing *Coalition to Save Our Children v. Bd. of Educ.,* 901 F.Supp. 824 (D.Del.1995)). The need for the thirteen overnight charges on one day, totaling $256.29, is not immediately obvious to the Court and, because no explanation has been provided, these costs will be deducted.

Lodestar of $190,586.75 for the initial fee petition is calculated as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Ronald H. Surkin | *requested hours:* 359.4 – (3.0) = 356.4 | $325.00 | $115,830.00 |
| Brian Kirby | *requested hours:* 316.40 – (9.5) = 306.9 (3.5*) = 303.4 | $220.00 *$ 75.00 x (3.5) = $262.50 | $66,748 + $262.50 = $67,010.50 |
| Alexander DiSanti | *requested hours:* 3.10 – (2.8) = 0.30 | $300.00 | $ 90.00 |
| Nancy DeMis | *requested hours:* 1.40 | $250.00 | $ 350.00 |
| Deborah Krull | *requested hours:* 10.70 | $175.00 | $ 1,872.50 |
| Margo Buckles | *requested hours:* 3.90 | $175.00 | $ 682.50 |
| Ann Lindsay Chin | *requested hours:* 67.35 – (4.0) = 63.35 | $ 75.00 | $ 4751.25 |

The costs submitted in the initial fee petition totals $19,147.80. The lodestar value for the supplemental fee petition is $7,571.00. The supplemental costs is $2035.93, reflecting a reduction of $256.29 for Overnight Express costs. In summary, I will direct Defendant to pay Plaintiff the sum of $198,157.75 in attorneys' fees and $21,183.73 in costs, for a total of $219,341.48.

### III. PLAINTIFF'S MOTION TO MOLD VERDICT TO INCLUDE PREJUDGMENT INTEREST AND DAMAGES RESULTING FROM TAX CONSEQUENCES

Plaintiff moves this Court to award $32,481.00 in prejudgment interest and $33,124.00 in damages arising from negative tax consequences to the Plaintiff as a result of his verdict. Defendant opposes both of these motions. Defendant contends that Plaintiff is not entitled to prejudgment interest because Plaintiff delayed in filing his action in federal court and this inequity precludes such an award. Defendant opposes Plaintiff's motion for damages as a result of negative tax consequences because, he argues such an award is speculative, especially in light of the variation in Plaintiff's salary.

### A. Prejudgment Interest

 It is left to the discretion of the court whether to grant prejudgment interest on an ADEA backpay award. *Booker v. Taylor Milk Co.,* 64 F.3d 860, 868 (3d Cir.1995). There is a "strong presumption in favor of awarding prejudgment interest, except where the award would result in 'unusual inequities.'" *Id.* The Third Circuit has noted that "the purpose of a pre-judgment interest is to 'reimburse the claimant for the loss of the use

of its investment or its funds from the time of the loss until judgment in entered' " in order to "compensate for loss of the time value of money." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1102 (3d Cir.1995). If a court grants an award of prejudgment interest, the applicable prejudgment interest rate is also left to the discretion of the court. *See Gelof v. Papineau*, 829 F.2d 452, 456–7 (3d Cir.1987).

To support his motion for prejudgment interest, Plaintiff attached an affidavit from his trial expert, Andrew C. Verzilli, M.B.A. Mr. Verzilli calculated the prejudgment interest rate using the method in *O'Neill v. Sears, Roebuck, & Co.*, 108 F.Supp.2d 443 (E.D.Pa.2000).[11] In *O'Neill*, the rate was calculated utilizing the post-judgment interest statute, 28 U.S.C. § 1961(a), and an accepted interpretation of this statute for prejudgment interest purposes. *See O'Neill*, 108 F.Supp.2d at 445–46 (citing *Young v. Lukens Steel Co.*, 881 F.Supp. 962, 978 (E.D.Pa.1994)). This interpretation uses "the 52–week Treasury bill rate from the date of the judgment and compounded the interest yearly based on the amount of earnings that the plaintiff would have collected in that year, plus all preceding years to the date of Plaintiff's termination." *See O'Neill*, 108 F.Supp.2d at 445–46; *see also Van Le v. Univ. of Pa.*, Civ. A. No. 99–1708, 2001 WL 849707, 2001, *15–16, U.S. Dist. LEXIS 10539, at *44–48 (E.D.Pa. July 13, 2001) (applying same method to calculate prejudgment interest award). The *O'Neill* court also used

the T-bill rate available at the end of each year in the prejudgment period instead of using the rate available at the time of judgment.

■ While different methods for calculating prejudgment interest have been applied in this circuit, Defendant does not contest the method used to achieve this rate. *See O'Neill*, 108 F.Supp.2d at 445 (explaining possible acceptable methods in Third Circuit). Rather, Defendant argues that no award should be granted because Plaintiff delayed "approximately four years" to file his complaint in federal court. The appropriate measurement of time, however, is between November 4, 1998 (when he received his letter from the PHRC that he could file suit) to January 4, 2001 (when he filed his Complaint in this Court). *See* 43 P.S. § 962(c)(1) (2002) (requiring Plaintiff to wait one year from filing of his administrative complaint before he bring an action in court). Plaintiff explained the delay in bringing suit by stating that his counsel was busy. (Jordan Deposition, at 303, attached to Def.'s Memo. in Opp. to Plaintiff's Mot. to Mold Verdict, Ex. A.) While I find that this delay does not preclude the award of prejudgment interest, I believe that it would be inequitable to allow Plaintiff to receive the benefit during the time of his delay. Allowing a two month window in which Plaintiff's counsel could have filed suit, I will exclude the prejudgment interest for an approximately two year period of time from January, 1999 to January, 2001. I will, however, grant prejudgment interest

---

**11.** Mr. Verzilli's calculations are as follows:

**Total Backpay:** $260,000.00

**Years since Termination:** 5.5 years

| Annual Amount: | $ 47,273.00 |
| --- | --- |

| Jan. 1997 to Jan. 1998 | $ 47,273.00 x 5.2% = $ 2,477.00 |
| --- | --- |
| Jan. 1998 to Jan. 1999 | $ 94,546.00 x 4.5% = $ 4,264.00 |

| Jan. 1999 to Jan. 2000 | $141,819.00 x 6.1% = $ 8,679.00 |
| --- | --- |
| Jan. 2000 to Jan. 2001 | $189,092.00 x 4.8% = $ 9,095.00 |
| Jan. 2000 to Jan. 2001 | $236,365.00 x 2.2% = $ 5,105.00 |
| Jan. 2002 to July 2002 | $260,000.00 x 1.1% = $ 2,860.00 |
| | **Total: $32,480.00** |

covering the time between January 1997 to January 1999 and January 2001 to July 2002, totaling $14,706.00.

### B. Negative Tax Consequences

■ Plaintiff requests damages to compensate him for the negative tax impact of receiving the backpay award in a lump sum rather than over time as if he had remained employed with CCH. The Third Circuit has never specifically addressed the issue of whether damages should be awarded to compensate for the negative tax consequences from an ADEA backpay award. *See Gelof v. Papineau,* 829 F.2d 452, 455 n. 2 (3d Cir.1987) (holding "[i]n light of [defendant's] concession that the judgment should properly include the negative tax impact of a lump sum payment as an element of damages, we do not address the question of whether such an award should be made in all backpay cases"); *see also Becker v. ARCO Chem. Co.,* 15 F.Supp.2d 621, 638 (E.D.Pa.1998), *appeal dismissed on other grounds,* 207 F.3d 176 (3d Cir.2000). One court in this district has granted damages for negative tax consequences. *See O'Neill,* 108 F.Supp.2d at 446–47. The court in *O'Neill* allowed this type of damages based on a reading of *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089 (3d Cir.1995). In *Starceski,* the Third Circuit held that the purpose of prejudgment interest is to "compensat[e] for the lost 'time value of money,'" which complies with the "make-whole" doctrine of the remedies afforded under the ADEA applies to the reasoning behind an award of negative tax consequences. 54 F.3d at 1103. The *O'Neill* court applied this same reasoning to allow for damages as a result of negative tax consequences of a backpay award. I find this reasoning to be compelling. In addition, I agree with the *O'Neill* court in finding that the speculative task of determining a plaintiff's tax liability does not preclude the award when an economic ex-

pert that testified at trial presents the change in applicable tax rates. *See id.* (holding expert testimony remedies speculation by the court), *see also Anderson v. CONRAIL,* Civ. A. No. 98–6043, 2000 WL 1622863, 2000, *5, U.S. Dist. LEXIS 15978, at *14–15 (E.D.Pa. Oct.25, 2000) (refusing to award damages without expert testimony), *Shovlin v. Timemed Labeling Sys., Inc.,* 1997 WL 102523, *3, 1997 U.S. Dist. LEXIS 2350, at *7 (E.D.Pa. Feb.27, 1997) (same). Thus, I find that Plaintiff can recover damages based on the negative impact of his $260,000.00 backpay award.

While Defendant objects to the speculative nature of these damages generally, it also argues specifically that Mr. Verzilli's calculations are speculative because he approximated the future earnings of Mr. Jordan. Although Mr. Jordan's earnings while at CCH did vary, Mr. Verzilli averaged his actual annual salaries from W–2 reports for the three years proceeding his termination, arriving at the amount of $76,051.00. Defendant contends that this speculation precludes a negative tax impact award and does not offer any alternative amount for Mr. Jordan's potential annual salary. In this respect, Defendant is caught between a rock and a hard place. At trial, arguing a lower projected salary secured a lower jury verdict, yet keeping the same argument now, results in a higher negative tax impact. Alternatively, if Defendant were to argue that Plaintiff's projected salary should be higher to reduce the negative tax impact award, it would undermine its arguments at trial. Thus, Defendant is of no help to the Court on this issue. I find that the average of Mr. Jordan's salaries in 1994, 1995 and 1996 is a reasonable projection of Plaintiff's salary in order to calculate the negative tax impact of his backpay award. Accordingly, I will award $33,124.00 based on Mr. Verzilli's calculation of the negative tax impact of Plaintiff's backpay award.

## IV. DEFENDANT'S MOTION TO AMEND JUDGMENT AND FOR REMITTITUR

Pursuant to Federal Rule of Civil Procedure 59(a) and (e), Defendant moves the Court to amend the judgment and for remittitur. Initially, Plaintiff Robert Jordan sued his employer, CCH, Inc., alleging age discrimination under the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"), interference with pension contributions in violation of ERISA, and breach of contract. Prior to trial, the Parties settled Plaintiff's ERISA and breach of contract claims for $12,700.00. *See Jordan v. CCH*, Civ. A. No. 01–0053, Stipulation and Order, dated June 11, 2002. The settlement agreement between the parties contained a confidentiality agreement wherein the Plaintiff could not disclose the settlement to the jury in the age discrimination case. (Def.'s Memo. in Support of its Mot. to Amend and Remittitur ("Def.Memo,") at 3.) The stipulation of record also stated that the parties "agreed that the issue of whether Plaintiff is entitled to any commissions or other amounts from sales he made during his employment at CCH is not at issue in this case and shall not be considered by the jury in anyway." *See Jordan v. CCH*, Civ. A. No. 01–0053, Stipulation and Order, dated June 11, 2002.

Trial on the ADEA and PHRA claims commenced on July 15, 2002. On the third day of trial, Plaintiff presented expert testimony regarding pension benefits that Plaintiff lost since his termination, amounting to approximately four percent of his annual salary. *See* Trial Tra. at 168–69. Defendant objected to the presentation of this evidence in light of the settlement agreement. The parties agreed that the amount of the settlement, $12,700.00, would be carved out of any verdict by the jury. The parties disagreed, however, about whether the settlement of Plaintiff's ERISA claim precluded entitlement to pension benefits in the age discrimination claims. This Court ruled that if necessary, it would reduce the judgment amount appropriately to remedy the presentation of such evidence. The jury awarded $260,000.00 in lost earnings and benefits by the Plaintiff since his termination up to the time of trial and $90,000.00 in compensatory damages.

Defendant makes a motion to amend judgment or, alternatively, for remittitur claiming that: (1) the award should be reduced by $12,700.00 as agreed to by the parties; and (2) the award should be reduced to the extent that Plaintiff's expert testified to pension benefits, which Defendant asserts is approximately $17,107.78. Defendant asserts that the settlement agreement "made clear" that the issue of pension and entitlement to pensions benefits was waived as part of the settlement of Plaintiff's ERISA claim. (Def. Memo, at 3.) Plaintiff disagrees that the settlement of the ERISA claims waived his right to include the value of the pension benefits he would have earned from 1997 to 2002 in his calculation of lost backpay under the age discrimination laws. This agreement, however, is not on the record before the Court. Therefore, I will only reduce the judgment by $12,700.00 as agreed to by the parties, but without the precise language of the agreement, I cannot reduce the judgment any further.

## V. CONCLUSION

As a consequence of the reasons stated above, I will grant in part and deny in part Plaintiff's Petition for Counsel Fees and Costs. Defendant shall pay to Plaintiff the sum of $219,341.48 in attorneys' fees and costs. I will grant in part and deny in part Plaintiff's motion to mold the verdict to include prejudgment interest and dam-

ages as a result of tax consequences in that amount of $47,830.00. Finally, I will grant in part and deny in part Defendant's motion to amend judgment and for remittitur and reduce Plaintiff's award by $12,700.00.

An appropriate Order follows.

### ORDER

**AND NOW,** this day of **October, 2002,** upon consideration of Plaintiff's petition for counsel fees and costs, and Plaintiff's motion to mold verdict to include prejudgment interest and damages resulting from tax consequences, Defendant's motion to amend judgment and for remittitur, and all responses thereto, and for the foregoing reasons, it is hereby **ORDERED** as follows:

1. Plaintiff's Petition for Counsel Fees and Costs (document no. 97) is **GRANTED IN PART AND DENIED IN PART** as follows: Plaintiff is hereby awarded and Defendant is hereby ordered to pay Plaintiff the sum of **$219,341.48** in attorneys' fees and costs.

2. Plaintiff's Motion to Mold Verdict to Include Prejudgment Interest and Damages Resulting from Tax Consequences (document no. 96) is **GRANTED IN PART AND DENIED IN PART** as follows: the judgment is amended to include **$14,706.00** in prejudgment interest and **$33,124.00** in damages as a result of negative tax consequences.

3. Defendant's Motion to Amend Judgment and For Remittitur (document no. 103) is **GRANTED IN PART AND DENIED IN PART** as follows: the judgment will be amended to exclude **$12,700.00.** Therefore, the jury award to Plaintiff shall now be **$385,130.00.**